Zeber Appeal.

Argued November 11, 1959. Before Jones, C. J., Bell, Musmanno, Jones, Cohen, Bok and McBride, JJ.

*Norman Landy*, with him *Wolken & Landy*, for appellant.

*David Stahl*, City Solicitor, with him *Joseph M. Tague*, Assistant City Solicitor, for City of Pittsburgh, appellee.

OPINION BY MR. JUSTICE COHEN, December 30, 1959:

This is an appeal under section 6 of the Act of June 27, 1939, P. L. 1207, 53 P.S. §23496, from an order of the County Court of Allegheny County affirming the action of the Civil Service Commission of the City of Pittsburgh dismissing appellant from his employment in the Pittsburgh Fire Department.

On September 16, 1954, appellant was arrested in the apartment of a sixteen-year-old girl, alleged to be mentally retarded. The police charged Zeber with rape, adultery, contributing to the delinquency of a minor, and, upon information received concerning an earlier incident, with indecent assault upon another child but ten years old. The following day Zeber was suspended from duty pending a fire trial board hearing. On September 28, 1954, the Trial Board of the Bureau of Fire met to hear charges of unbecoming personal conduct against Zeber which constitutes justifiable grounds for disciplinary action against a fireman under 53 P.S. §23495.[1] Appellant Zeber appeared and was represented by counsel.

---

[1] "No employe in the competitive class in any bureau of fire in any city of the second class shall be removed, discharged, or suspended for a period exceeding ten (10) days as a penalty, or reduced in rank or pay without his written consent, except for just cause which shall not be religious or political, . . . . Such decision shall only be determined by trial of charges, . . . . Such charges may be of disability for service, in which case the court shall be one of inquiry, whose decision may be for the honorable discharge from the service of the employe concerned; or of neglect or violation of law or duty, inefficiency, intemperance, disobedience of orders, or unbecoming official or personal conduct."

At the hearing three policemen testified that they had been called by neighbors to the apartment house where appellant was found. The police ascertained that the girl's mother was at her place of employment. When the mother returned shortly thereafter, the police accompanied the mother and the girl to a physician who certified to the officers that the girl had had relations with a man within four or five hours of the medical examination. The arresting officers also testified that they had observed lipstick upon the appellant's mouth when they found him in the girl's bedroom, and that members of the crowd which had congregated outside the building had commented about this. Although at the time of the arrest both appellant and the girl denied any improprieties, the girl later told the physician that she had had intercourse with the appellant in the apartment. There was other testimony by the officers to the effect that a neighbor who had summoned the police had asserted to them that she had seen appellant make improper advances to a ten-year-old child on the street earlier that day.

At the conclusion of the hearing, the Trial Board decided to continue appellant's suspension "indefinitely or until such time as the pending criminal case is disposed of in the Courts; meanwhile the Trial Board of the Bureau of Fire reserves the right to reconvene at a future date and make final disposition." What the board in effect did was to hear evidence and make findings. For the time being they postponed their ultimate disposition of the case, perhaps with the thought that the court's disposition of the criminal charges unfavorably to appellant would make their job a perfunctory one.

These findings were subsequently approved by the Mayor of the City of Pittsburgh. On October 21, 1954, the Director of the Department of Public Safety, by letter, informed Zeber of his suspension and, in accord-

ance with the fireman's Civil Service Act, 53 P.S. §23496, advised him that he had five days within which to make a reply thereto if he so desired. No answer was made. In fact, there was no further communication by appellant to any city agency until July 15, 1957, when he requested reinstatement.

The grand jury in October and November, 1954, indicted Zeber for indecent assault, adultery and contributing to the delinquency of a minor. The trial of these cases was postponed several times by Zeber himself. Ultimately, in December, 1956, a demurrer to the evidence was sustained on the charge of contributing to the delinquency of a minor, appellant was found not guilty in a nonjury trial of the charge of indecent assault, and the jury failed to return a verdict on the charge of adultery. On June 20, 1957, the charge of adultery was nolle prossed at the request of the girl's mother.

On July 15, 1957, appellant, acting through counsel, wrote to the Director of the Department of Public Safety requesting reinstatement. At appellant's request, the hearing before the Trial Board was postponed at least until November. On April 21, 1958, the Trial Board reconvened and recommended Zeber's dismissal. Appellant *then* appealed to the Civil Service Commission. At a hearing on August 25, 1958, additional testimony was taken, and on October 8, 1958, the Commission dismissed the appeal. This dismissal was affirmed by the County Court in an opinion by Judge GUFFEY.

Both the Commission and the lower court concluded that appellant had waived his rights by not protesting at any time that the provisions regarding removal and suspension had not been strictly followed. The statute in question, 53 P.S. §23495, authorizes the Trial Board ". . . to impose fines and pecuniary penalties, to be stopped from pay, or to suspend from pay or duty, or

both, for a period fixed by them, *not exceeding one year,* or to dismiss from the service." (Emphasis supplied). While it is clear that when the period of suspension went beyond one year the Act was not being complied with, it is equally clear that appellant acquiesced in this deviation for several years. In point of fact, appellant first raised the question of improper suspension in August, 1958, before the Civil Service Commission.

Although this Court has never had occasion to declare whether a fireman may waive strict compliance with the Civil Service Act, we have little difficulty in finding a waiver in such a clear case as this. Strong considerations of public policy require that an employee of a public body who claims to have been improperly or illegally discharged or suspended must act with utmost diligence in asserting his rights. It can be presumed that when someone is dismissed or suspended from an active position in the public service for an extended period of time, someone else has been chosen to take his place. The work of a fireman must be done and it must be paid for by the city. Unless facts are alleged which constitute a sound excuse for the delay in asserting one's rights, such delay in commencing action to rectify the error is absolutely indefensible and deprives the complainant of any right to object.

The Trial Board, when it first met in September, 1954, expressly did not make a final disposition. This action was obviously to appellant's advantage, for if the Trial Board had been forced to make a final disposition immediately, the probability is strong that upon the evidence received the Board would have ordered immediate dismissal. Zeber was content to accept the indefinite suspension and take his chances in the criminal courts. When the criminal charges were finally resolved in his favor some three years later, however,

appellant *then* decided to seek reinstatement to his job, and for the first time complained of the indefinite suspension.

This is not a situation of unknowing acquiescence. From the very start, appellant has been represented by counsel. Both Zeber and his counsel must be charged with knowledge of appellant's rights under the Civil Service Act. When the suspension extended beyond one year, due in large measure to delays caused by appellant himself, and he made no objection to the length of the suspension, he must be held to have waived his right to object. Zeber made no effort to register his disapproval to the Trial Board. He made no effort to compel either the Trial Board or the Civil Service Commission to act during the period when he was clearing up the criminal charges. He could easily have done so by making a motion to dismiss or by instituting mandamus proceedings. The findings here do not disclose that exercise of reasonable diligence on Zeber's part which the law imposes upon him as a duty if he is to complain about the action of the Trial Board. This holding has significance in view of appellant's indirect claim for back pay during the period of unauthorized suspension.

Appellant cites *Geis's Appeal*, 341 Pa. 413, 19 A. 2d 368 (1941), for authority that the provisions in the Civil Service Act dealing with terminating employment against the will of the employee must be strictly followed. In the *Geis* case the Director of Public Safety of Pittsburgh took an undated resignation from a fireman and later used the resignation as a means of removing him from the Bureau of Fire for subsequent misconduct. Geis was not given the opportunity to have the fact of his misconduct determined by a Trial Board, in accordance with the provisions of the Act. In *Geis*, however, the fireman took an immediate appeal to the Civil Service Commission from the dismissal. Therefore, in the proper manner, he promptly raised

the issue of illegal dismissal. Here, however, although Zeber's rights had ripened by September, 1955, he chose to sit on those rights far beyond the time when they could be properly recognized in a hearing before the Civil Service Commission. It is one thing to say that the provisions of the Act must be strictly complied with, and quite something else to say that the aggrieved party may delay until whatever time suits him to raise a proper objection. Appellant's right to complain about the indefinite suspension was effectively waived.

Appellant's other contention is that the record does not contain sufficient evidence of unbecoming personal conduct which would warrant the dismissal of a fireman who has seventeen years service. We think that the evidence already disclosed, extracted from the record, is adequate to rebut this contention. A broad discretion is vested in the administrative officials as to what constitutes just cause for dismissal under the Civil Service Act. A court cannot substitute its judgment for that of the Trial Board and Civil Service Commission in whom the discretionary power is vested. This Court, in a long line of cases, has refused to step in and set aside the dismissal of a municipal employee where sufficient evidence was present in the record to sustain the action of the administrative body. *Crede v. Pittsburgh*, 355 Pa. 369, 49 A. 2d 700 (1946); *Wagner v. Pittsburgh*, 352 Pa. 647, 44 A. 2d 261 (1945); *McCrory v. Philadelphia*, 345 Pa. 154, 27 A. 2d 55 (1942); *Gretton v. Pittsburgh*, 344 Pa. 219, 25 A. 2d 351 (1942); *Raffel v. Pittsburgh*, 340 Pa. 243, 16 A. 2d 392 (1940). If there is admissible evidence, the weight of which the court is without authority to consider, to move the deliberate powers of the Commission, without manifestly abusing its discretion, in sustaining or reversing the action of the Trial Board, then the courts may not reverse such action. *Raffel v. Pittsburgh*, supra.

Unbecoming conduct on the part of a municipal employee, especially a policeman or fireman, is any conduct which adversely affects the morale or efficiency of the bureau to which he is assigned. It is indispensable to good government that a certain amount of discipline be maintained in the public service. Unbecoming conduct is also any conduct which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services. It is not necessary that the alleged conduct be criminal in character nor that it be proved beyond a reasonable doubt. For this reason the disposition of the criminal charges favorably to appellant did not require the Trial Board to drop its charges. It is elementary that the measure of proof to convict for a criminal offense is substantially different and greater than that necessary to support the dismissal of a municipal employee. It is sufficient that the complained of conduct and its attending circumstances be such as to offend publicly accepted standards of decency. There was clearly sufficient evidence in the record for the Trial Board, the Commission, and then the court below to determine that appellant's conduct fell below these standards. We find no abuse of discretion in dismissing appellant from his job.

Order affirmed.