Baker Case.

Argued October 2, 1962.  Before Bell, C. J., Jones, Cohen, Eagen and Keim, JJ.

*David W. Craig*, City Solicitor, with him *Charles N. Caputo*, Assistant City Solicitor, for City of Pittsburgh, appellant.

*Louis C. Glasso*, for appellee.

OPINION BY MR. JUSTICE COHEN, November 13, 1962:

Lieutenant Baker of the Pittsburgh police force, appellee, while off duty was present at an illegal gambling club in nearby New Kensington, Westmoreland County, when the premises were raided by federal authorities on August 24, 1961. The presence of a high police official at such an establishment, of course, received adverse public comment. The director of the department of public safety ordered a hearing by the Police Trial Board (Board), consisting of three of appellee's superiors. Appellee admitted that he had visited and spent some time at the gambling club on three separate occasions, but stated that he had gone there to look for an errant son and not to gamble. He also admitted that he had exercised poor judgment in going to the club but asked that the Board take into consideration his emotional upset caused by the difficulties with his son. His attorney recommended that he be reprimanded or suspended rather than dismissed, stressing appellee's fine police record and distinguished character witnesses.

The Board unanimously recommended that appellee be dismissed. This recommendation, as required by statute, was approved by the mayor of Pittsburgh and affirmed by the Civil Service Commission. An appeal was taken by appellee to the County Court of Allegheny County and a trial de novo was held as required by the Act of August 10, 1951, P. L. 1189, §8, 53 P.S.

§23538. Appellee did not produce any additional evidence at this trial and thus the evidence before the lower court consisted primarily of the Board's transcript. The lower court reversed the order of dismissal giving two reasons for its decision. First, it stated that appellee's acquittal by a federal jury of a charge of perjury in connection with his testimony before a federal grand jury that he had visited the club only once corroborated his story that his purpose in going to the club was merely to find his errant son.[1] Secondly, the lower court felt that appellee had been punished enough by the adverse public comment on his behavior. This appeal by the City of Pittsburgh followed.

We believe that the lower court was guilty of error in reversing the order of the Board and the Civil Service Commission. There were three questions before the Board in this case: (1) the factual question raised in the charges against appellee as to whether he was present at the gambling club on August 24, 1961, and at other times; (2) the legal question whether such facts constituted just cause for his dismissal; and (3) the judgment question whether the power of dismissal, if authorized, should be exercised in this case.

On the factual question, appellee admitted that he visited and spent time at the gambling club on three occasions. As the charges against appellee before the Board were drawn,[2] his purpose in going to the club was not important, although, of course, if the purpose

---

[1] The lower court reasoned that since appellee's only apparent defense to this admittedly false statement was the emotional upset caused by his difficulties with his son, the federal jury must have believed appellee's story about his errant son. Because of the view we take of this case, see infra, we need not comment on the soundness of this reasoning.

[2] The specification of charges against appellee in substance was as follows:

"The said Lieutenant Arthur Baker, a member of the Pittsburgh Bureau of Police, while off duty, did on the 24th day of

had been to gamble, his conduct would have been more reprehensible. Hence, appellee's acquittal by the federal jury, even if relevant to show his purpose in going to the club, was not relevant to the question whether the facts proved at the Board's hearing substantiated the charges made against him. The factual question was thus admitted by appellee.

On the legal question of whether appellee's presence in the gambling establishment constituted cause for his dismissal, here again there seems to be little dispute by appellee. The statute provides that a policeman may be discharged for "just cause, which shall not be political or religious" and gives as an example of "just cause" "unbecoming official or personal conduct."[3] In *Zeber Appeal,* 398 Pa. 35, 43, 156 A. 2d 821, 825 (1959), we defined "unbecoming conduct" on the part of a policeman or fireman as that "which adversely affects the morale or efficiency of the bureau to which he is assigned" or "has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services." It cannot be doubted, and apparently the lower court agreed on this point, that the presence of a police lieutenant in an illegal gambling establishment on three occasions, in effect condoning the illegal operations by his presence, adversely affects the morale of fellow police officers and also tends to destroy public confidence in the ability and willingness of police officers to uphold law and order.[4]

---

August, 1961, and at other times, visit a gambling room in the Garibaldi Building, New Kensington, Westmoreland County, Pennsylvania, where gambling was taking place, and was so present at the time of a raid on the said gambling establishment by The Federal Authorities, all of which is prejudicial to the reputation and the good name of the Bureau of Police of the City of Pittsburgh and Conduct Unbecoming an Officer."

[3] Act of August 10, 1951, P. L. 1189, §7, 53 P.S. §23537.

[4] Our cases have held that "just cause" for dismissal exists so long as the reason for dismissal pertains to the employee's fitness

The final question before the Board was what punishment to impose on appellee for his improper conduct and this is where the lower court misconceived its role under the Civil Service Act. The lower court apparently believed that the statute requiring it to hold a trial de novo authorized it to make an independent determination of the punishment necessary for the breach of duty by the civil servant. Such is contrary to the interpretation established by this court in *Bell Appeal*, 396 Pa. 592, 152 A. 2d 731, 741 (1959) where we stated: "Although on appeal to the County Court of Allegheny County under the Act of 1951 . . . from an order of the Civil Service Commission of the City of Pittsburgh, the proceeding is de novo, the court does not have an absolute discretion to exercise in adjudging the merit and validity of the Civil Service Commission's order. It is necessary that the court give due respect and weight to the action of the duly constituted municipal body which is authorized to act with respect to charges against members of the City's police force."

Under the scheme established by the civil service acts, primary responsibility and decision as to the methods necessary to uphold police morale and efficiency and to maintain public confidence in the police department resides in the municipal officials. See *Caldwell v. Fairley*, 363 Pa. 213, 69 A. 2d 135 (1949) and *Thomas v. Connell*, 264 Pa. 242, 107 Atl. 691 (1919). The function of the courts is merely to make sure that just cause for dismissal exists, both factually and legally, and that the municipal officials have not abused their discretion in imposing the punishment in question. It is *not* our function to decide what we would have done under the circumstances if we had been Baker's superiors.

to fill his position and the officials act in good faith. See *Gretton v. Pittsburgh*, 344 Pa. 219, 25 A. 2d 351 (1942).

Viewing the question then as one of deciding whether the officials responsible for the Pittsburgh police department abused their discretion in dismissing appellee for his admitted improper conduct, we cannot say that they have done so under the circumstances presented in this case, even though we might have imposed a suspension rather than a dismissal had the responsibility for such decision been placed in our hands as an original matter. Accordingly, we must reverse the order of the lower court reinstating appellee.

Order reversed.