## In Re: Appeal of Cuono

*Renald S. Barratta*, for appellant.
*Philip D. Laver*, for Borough of Bangor.
*Alan B. McFall, Solicitor*, for Borough of Bangor.

WILLIAMS, *P.J.*, March 2, 1982—This matter is before the court on appeal from a decision of a borough Civil Service Commission pursuant to 53 P.S. §604.

On December 5, 1980, the Bangor Borough Council discharged appellant from his employment as the Borough of Bangor Chief of Police for theft of funds, inefficiency, and conduct unbecoming an officer. At appellant's request, hearings were held before the Civil Service Commission on January 15, 1981, and January 19, 1981. On February 7, 1981, the Civil Service Commission filed its findings of fact and conclusions of law and entered an order affirming the action of the Borough Council.

On February 19, 1981, appellant filed the present appeal. No additional testimony was taken and

after a conference with the court, the issues have been briefed and argued.

This case is governed by the Borough Code, 53 P.S. §45101 et seq. Section 46191 of the code provides that when a borough employee is removed, and a hearing before the Civil Service Commission has been held:

"All parties concerned shall have immediate right of appeal to the court of common pleas of the county, and the case shall there be determined as the court deems proper. . . . The decision of the court affirming or revising the decision of the commission shall be final, and the employee shall be suspended, discharged, demoted, or reinstated in accordance with the order of court."

This section has been interpreted to allow a court of common pleas to revise a decision by the Commission as long as the court does not abuse its discretion in doing so: Reichenbach v. Civil Service Commission of the Borough of Wilkinsburg, 53 Pa. Commw. 363, 417 A. 2d 1292 (1980); Crawford v. Borough of Lewisburg, 42 Pa. Commw. 260, 401 A. 2d 385 (1979).

We find further elaboration on our scope of review in Baker Case, 409 Pa. 143, 185 A. 2d 521 (1962):

"Under the scheme established by the civil service acts, primary responsibility and decision as to the methods necessary to uphold police morale and efficiency and to maintain public confidence in the police department resides in the municipal officials. See Caldwell v. Fairley, 363 Pa. 213, 69 A. 2d 135 (1949) and Thomas v. Connell, 264 Pa. 242, 107 Atl. 691 (1919). The function of the courts is merely to make sure that just cause for dismissal exists, both factually and legally, and that the

municipal officials have not abused their discretion in imposing the punishment in question. It is *not* our function to decide what we would have done under the circumstances if we had been Baker's superiors." Id at 147.

With this scope of review in mind, we have reviewed the notes of testimony before the Civil Service Commission and the exhibits. The evidence established that as chief of police, appellant was in charge of assigning policemen to work security at the local football games, was responsible for billing the school district for the games worked, and was responsible for distributing to the men their compensation. The rate of compensation was $20 per game for each officer. Appellant testified that in previous years, the officers who were on regular duty at the time they worked the football games were also paid for the football games. Appellant told the Commission that he changed this policy last year because the manual provides that officers who are on regular duty should not receive additional compensation for such work. During the first football game last season, Sergeant Gillingham and Officer Ducharme, who were on regular duty while working the game, inquired about their pay and appellant testified that he "told them you are not supposed to be paid, but I'll see what I can do for you."

The evidence further established that appellant billed the school district $940, reflecting a total of 47 games worked collectively by the men, when the total number of games worked was actually 43. Furthermore, the 43 games actually worked included six games worked by Sergeant Gillingham and six games worked by Officer Ducharme during which they were on regular duty and not entitled to compensation. Appellant received and cashed a

check from the school district for $940 and distributed $700 to the men. Gillingham and Ducharme were paid for only two games each. Appellant kept the remaining $240 until confronted by the mayor about the overbilling.

We conclude that the record in this case sufficiently supports the Commission's findings that appellant "intentionally withheld funds received from the School District that he knew he was not entitled to" and that he "knowingly engaged in conduct unbecoming an officer."* We further find that the Borough Council and the Commission did not abuse their discretion in imposing the punishment they did.

Appellant raises a second issue before this court. At the hearing before us in December, testimony was given by the members of the Civil Service Commission that they had been advised by the Commission's solicitor that their only function was to accept or reject the action of the Borough Council, i.e. that they did not have the power to modify the action taken by the Council. Appellant argues that the Civil Service Commission does have the power to modify the action taken by the Borough Council, and therefore the advice received by the

---

*Our Supreme Court has defined conduct unbecoming an officer as:

" . . . any conduct which adversely affects the morale or efficiency of the bureau to which he is assigned . . . [and] any conduct which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services." Zeber Appeal, 398 Pa. 35, 43, 156 A. 2d 821, 825 (1959).

It should be noted that, although conduct may not amount to a criminal offense, it may nevertheless constitute conduct unbecoming an officer.

members tainted and prejudiced the proceedings before the Commission.

Although the Borough Code does not expressly give the Civil Service Commission the authority to modify a penalty imposed by borough officials, the courts have recognized in the Commission a limited discretion to modify a penalty: Borough of Bristol v. Downs, _____ Pa. Commw. _____, 409 A. 2d 467 (1981). In Borough of Bristol, a police sergeant charged with neglect, inefficiency, disobedience of orders and conduct unbecoming an officer was permanently demoted to patrolman. The sergeant appealed to the Civil Service Commission, which found that the charges were unsubstantiated and modified the punishment to a three-day suspension. On appeal to the Commonwealth Court, the Borough argued that the Commission exceeded its authority in altering the punishment. The Commonwealth Court stated the following in response:

" . . . Under The Borough Code, the borough council has the primary responsibility and discretion for determining whether or not and how a police officer should be disciplined. And, as we said in *Appeal of Zimmett*, 28 Pa. Commw. 103, 107, 367 A. 2d 382, 384 (1977):

'It is necessary that both court and commission give due respect and weight to the action of the duly constituted municipal body which is authorized to act with respect to charges against members of the police force. Accordingly, we must weigh the reasons for which the Commission overrode the Council's primary discretion to determine whether it abused its discretion.'

Here, the Commission observed that the Borough had substantiated only two technical violations and that these violations were incurred in performing a

public service which was 'decent and humane' under the circumstances. The Commission found that Downs' actions were related to his official duties and 'that he did not intentionally or otherwise hide any information with respect to the events of January 17, 1978 . . . ' Finally, the Commission, noting its limited discretion to modify a penalty, concluded that Downs had been unfairly punished and so reduced the penalty. Having carefully reviewed the record and weighed the Commission's reasons, we agree that the offenses proved do not support the punishment imposed. We believe, therefore, that the Commission's decision was proper and within its limited discretion to modify the Council's punishment." Id at 469.

Thus, it appears that the Commission has limited discretion to modify a penalty when the Commission finds that the charges against the borough employee are unsubstantiated by the evidence.

In Banks v. Bd. of Commissioners of Upper Moreland Township, 7 Pa. Commw. 393, 298 A. 2d 612 (1972), the court held that it was improper for the Civil Service Commission to reduce the prescribed penalty when the Civil Service Commission upheld the township's charges. In doing so, the court interpreted Section 645 of the First Class Township Code, 53 P.S. §55645. In its opinion the court cited the following portion of 53 P.S. §55645:

" '*In the event the commission shall sustain the charges and order the suspension, removal or reduction in rank*, the person suspended, removed or reduced in rank shall have immediate right of appeal to the court of common pleas of the county and the case shall there be determined as the court deems proper. No order of suspension made by the commission shall be for a longer period than one

year. Such appeal shall be taken within sixty days from the date of entry by the commission of its final order and shall be by petition. Upon such appeal being taken and docketed, the court of common pleas shall fix a day for a hearing and shall proceed to hear the appeal on the original record and such additional proof or testimony as the parties concerned may desire to offer in evidence. The decision of the court affirming or reversing the decision of the commission shall be final and the employe shall be suspended, discharged, demoted or reinstated in accordance with the order of the court.' (Emphasis added.)" Id. at 397.

The court then remarked:

"We can find nothing in this section which would authorize the Commission to modify a penalty imposed by the Township when it also finds that, as a matter of law, the Township has produced sufficient evidence to justify the penalty it has imposed. The purpose of the Commission clearly seems to be to protect employees from arbitrary or discriminatory Township action, not to usurp the functions of elected Township officials in the administration of their duties." Id. at 398.

Although the Banks case concerns a first class township and not a borough, we refer to it because the township code section, 53 P.S. §55645, interpreted by the Banks court is virtually identical to the borough code section on hearings on dismissals and reductions: 53 P.S. §46191. The interpretation given 53 P.S. §55645 is equally applicable to 53 P.S. §46191 dealing with boroughs.

In the instant case, the Commission made the following conclusions of law:

"9. Chief Thomas Cuono intentionally withheld funds received from the School District that he

knew he was not entitled to and dealth [sic] with that money as his own.

"10. Chief Thomas Cuono by failing to distribute the funds he received or to first seek guidance from the Mayor or other appropriate Borough Officials, knowingly engaged in conduct which he knew or should have known would adversely affect morale and efficiency of the department, and would also tend to destroy public respect and confidence in the Police Department.

"11. Chief Thomas Cuono knowingly engaged in conduct unbecoming an officer.

. . .

"14. The Borough Council has produced sufficient evidence to justify the penalty it has imposed."

Having found that the charges against appellant were substantiated by the evidence and that the evidence justified the penalty imposed, the Commission had no authority to modify the penalty.

The advice given the Commission by its solicitor did not prejudice the proceedings as the Commission specifically found that the evidence produced justified the penalty imposed.

Wherefore, we enter the following

## ORDER OF COURT

And now, March 2, 1982, the order of the Civil Service Commission is affirmed; the appeal is dismissed.