476 A.2d 895

**Carroll K. JONES, Appellee,**

**v.**

**CITY OF PITTSBURGH, DEPARTMENT OF FIRE, Appellant.**

Supreme Court of Pennsylvania.

Argued March 8, 1984.

Decided May 25, 1984.

D.R. Pellegrini, City Sol., Richard J. Joyce, Asst. City Sol., Pittsburgh, for appellant.

John L. Elash, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

The Department of Fire of the City of Pittsburgh appeals by allowance a Commonwealth Court order, 75 Pa.Cmwlth. 166, 461 A.2d 897, which vacated an order of the Court of Common Pleas of Allegheny County and ordered this case remanded to the Civil Service Commission of the City of Pittsburgh. Common Pleas held that appellee, a member of the Pittsburgh Fire Department had, as a matter of law, engaged in conduct unbecoming an officer. In so holding, Common Pleas reversed the Civil Service Commission and reinstated the decision of the Fire Trial Board.

Resolution of this case requires us to determine but one issue: did Common Pleas properly determine that appellee had engaged in conduct unbecoming an officer? We hold that it did. We thus reverse the order of Commonwealth Court and reinstate the order of Allegheny County Common Pleas.

### I

The facts, as found by the Civil Service Commission, are straight-forward and not in dispute. On June 16, 1981, appellee Jones, a member of the Pittsburgh Fire Department, returned home from his shift at 7:30 A.M. to find his home burglarized and his stereo system stolen. Jones spoke with several neighbors and learned that the stereo was probably being hidden in an abandoned building behind

Jones's house. Jones reported the theft to the police, and requested their help in retrieving his property. The police told Jones that because of lack of manpower, they could not stake out the building or accompany him to get his property. They told him to retrieve it himself.

Jones armed himself with a .22 caliber pistol and began searching the building. During the search, he was surprised by two boys[1] who had returned. A scuffle ensued, with one of the youths coming after Jones, the other running away from Jones. Jones opened fire, wounding both youths. The fleeing juvenile died from a shot in the back of the head.[2]

Jones himself admitted that the other wounded boy called him by name and asked for help. He responded by demanding to know where his stereo was. The wounded boy indicated it was in a green van parked outside the building. Jones stepped over him, went to the van and retrieved the stereo. Jones did not call for aid, and fled as police and paramedics, called by neighbors who saw the wounded boy, were arriving. Shortly thereafter, Jones turned himself in to the police and voluntarily gave a statement relating the incident.

On that record the Civil Service Commission concluded that Jones acted in self-defense and not in an unbecoming manner. We believe Jones's prior conduct in arming himself before seeking self-help to right a personal wrong established his willingness to act violently and use deadly force in circumstances the law does not permit. Such conduct is conduct unbecoming an officer in the uniformed fire service as a matter of law.

The case received widespread publicity in the Pittsburgh area, focusing attention on Jones's criminal trial and disci-

---

**1.** The two male juveniles were, apparently, the burglars of Jones's home. The Civil Service Commission found this as a matter of fact. RR. 143. Moreover, it was clear that the wounded youth to whom Jones spoke knew the location of the stolen stereo.

**2.** The Civil Service Commission found as a matter of fact that Jones fired "in fear and self-defense." RR. 143.

plinary proceeding and on the Fire Department in general. The Fire Trial Board[3] convened on July 1, 1981 to hear charges that Jones had violated Department of Fire Regulations 19.02, 19.03 and 19.04.[4] Jones pleaded not guilty. At that time, charges of criminal homicide and aggravated assault were pending against Jones, and the City offered to postpone the hearing until after the criminal trial if appellee would agree to a suspension without pay. He refused, and the Board took testimony, adjourning without a decision, pending the outcome of appellee's trial.

A jury acquitted Jones of all criminal charges. The Board then reconvened. The City offered to resolve the charges by allowing him to return to work without back pay, a total of some $8,000. The Board ultimately found Jones guilty of all charges of conduct unbecoming an officer, fined him $5,000 (to be covered by his back pay), and

3. The Fire Trial Board acts pursuant to the provisions for firemen's civil service for second class cities, 53 P.S. §§ 23491–23498, and as such is part of the overall civil service system. Its function is to insure that employees in the competitive class in the fire department are removed, discharged or suspended only "for just cause which shall not be religious or political" and only "by the decision of a court, either trial or inquiry, duly determined and certified to the mayor and approved in writing by the mayor." 53 P.S. § 23495. The trial board is comprised of three members of the fire department equal or superior in rank to the employee being tried. The procedure for choosing the board and the provisions for proceedings after its decision are set forth in 53 P.S. § 23496.

4. These Regulations provide:
19.02. FIREMEN; DISCIPLINARY ACCOUNTABILITY
All members of the Bureau, while off duty or on leave of absence, shall be held accountable for their proper conduct, whether in uniform or not.
19.03. FIREMEN; DISCIPLINE, UNBECOMING CONDUCT
No member shall conduct himself in any manner unbecoming to the Bureau of Fire, either by word, action or appearance. Each member is expected to conduct himself in a creditable manner under all conditions that may arise either on or off duty. By necessity much dependence is placed on the initiative, loyalty and discretion of each individual.
19.04. FIREMEN; DISCIPLINE, OBEDIENCE OF LAW
All members are required to obey all laws and ordinances of the City of Pittsburgh, the State of Pennsylvania, and the United States of America.
RR. 154.

returned him to work with the balance of his back pay restored. The mayor of Pittsburgh approved this recommendation pursuant to 53 P.S. §§ 23495 and 23496.

Jones appealed to the Civil Service Commission, which reversed the Trial Board and specifically held that he was not guilty of unbecoming conduct. The Commission ignored the evidence and admissions on what happened after the shooting and avoided any specific findings of fact on the post-shooting events. Allegheny County Common Pleas reversed, holding that he was guilty of unbecoming conduct as a matter of law. Commonwealth Court vacated Common Pleas's order and remanded the case to the Commission for a finding of fact as to what occurred after the shooting. We granted the City's petition for allowance of appeal, and now reinstate the order of Common Pleas Court.

## II

Initially, we note that evidence of what transpired after the shooting was of record before the Commission and was made part of its record. Pursuant to 53 P.S. § 23496,[5] the Trial Board record, containing evidence of what occurred both before and after the shooting as well as appellee's statement to the police, was incorporated into the record of the Commission. The receipt of this record in evidence was in fact the first order of business disposed of at the Commission's hearing. RR. 15–16. Thus, while the Decision of the Commission does not make specific findings of fact on Jones's post-shooting conduct, compliance with 53 P.S. § 23496 made all relevant facts concerning it part of the

5. 53 P.S. § 23496 provides, in relevant part:

 . . . .

 In every case of such removal, discharge, suspension, reduction or fine, a copy of the statement of the reasons therefor, and the written answer thereto of the person so sought to be penalized, if any, together with a transcript of the proceedings and decision of said trial court shall be furnished forthwith to the Civil Service Commission and entered upon its records. If the employe affected shall demand it, the Civil Service Commission shall upon his written request therefor, grant him a public hearing, which hearing shall be held within a period of fifteen days from his said request.

 The "trial court" in this case was the Fire Trial Board.

record before both the Commission and the courts which subsequently reviewed the case.

 Nevertheless, we do not and need not determine these facts. Indeed, we should not because our scope of review is limited,[6] and the findings of fact of the Commission are binding on appeal. The Commission, not this Court, is the fact finder. *Foley v. Civil Service Commission of the City of Philadelphia*, 55 Pa. Commonwealth Ct. 594, 423 A.2d 1351 (1980). The legal conclusions drawn by the Commission from its findings of fact are, however, subject to judicial review. *Id.* Moreover, the determination of what constitutes conduct unbecoming an officer is a question of law. *Tomkiel v. Tredyffrin Township Board of Supervisors*, 64 Pa. Commonwealth Ct. 418, 440 A.2d 690 (1982).

 On the record in this case, we have no difficulty in concluding that appellee was guilty of conduct unbecoming an officer as a matter of law. We set forth the standard for determining conduct unbecoming in the case of *Zeber Appeal*, 398 Pa. 35, 156 A.2d 821 (1959):

Unbecoming conduct on the part of a municipal employee, especially a policeman or fireman, is any conduct which adversely affects the morale or efficiency of the bureau to which he is assigned. It is indispensable to good government that a certain amount of discipline be main-

**6.** 2 Pa.C.S. § 754(b) governs disposition of appeals from local agency action provides in relevant part:

§ 754. Disposition of appeal

. . . .

(b) Complete record.—In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. After hearing the court shall affirm the adjudication unless it shall find that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence.

See also *Williams v. Civil Service Commission*, 457 Pa. 470, 327 A.2d 70 (1974).

tained in the public service. Unbecoming conduct is also any conduct which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services. It is not necessary that the alleged conduct be criminal in character nor that it be proved beyond a reasonable doubt ... It is elementary that the measure of proof to convict for a criminal offense is substantially different and greater than that necessary to support the dismissal of a municipal employee. It is sufficient that the complained of conduct and its attending circumstances be such as to offend publicly accepted standards of decency.

*Id.*, 398 Pa. at 43, 156 A.2d at 825. We have continued to adhere to this standard. *Fabio v. Civil Service Commission of the City of Philadelphia*, 489 Pa. 309, 414 A.2d 82 (1980) (collecting cases). *See also* Annot. 9 A.L.R.4th 614 (1981).

Considering only the facts established by the Commission against this standard, the evidence establishes unbecoming conduct as a matter of law. Jones engaged in "self-help" to retrieve his stolen property. He armed himself with a handgun and went in search of his stereo. His search ended in the death of one juvenile and the wounding of another. The possible need for self-defense in that situation does not justify the unbecoming conduct which occurred when this fireman armed himself and took the law into his own hands, simply because he wished to right what he apparently considered a grievous personal wrong. Conduct far less serious in nature has been held to be a proper basis for a finding of unbecoming conduct. *Baker Case*, 409 Pa. 143, 185 A.2d 521 (1962) (mere presence of an off-duty officer in an illegal gambling club); *Zeber Appeal*, *supra*, (sexual relations with a retarded 16-year old girl); *Fabio, supra*, and *Faust v. Police Civil Service Commission of the Borough of State College*, 22 Pa. Commonwealth Ct. 123, 347 A.2d 765 (1975) (off-duty sexual relations); *Comly v. Lower Southampton Township*, 28 Bucks 319 (1976) (summary violations of state game laws while

off-duty and out of jurisdiction); *Pawling v. City of Reading,* 62 Berks 56 (1969) (playing poker for money). Indeed, it is not even necessary that the conduct be criminal in nature, *Zeber Appeal, supra.* The disposition of the criminal charges favorably to Jones did not require a dismissal of the disciplinary proceedings. *Id. See also Commonwealth of Pennsylvania, Pennsylvania State Police v. Forrest M. Swaydis,* 504 Pa. 19, 470 A.2d 107 (1983).

We are persuaded that Jones's peers on the Fire Trial Board correctly found his conduct in this shooting was conduct unbecoming an officer because that conduct "adversely affect[ed] the morale or efficiency of the bureau", had a "tendency to destroy public respect for municipal employees and confidence in the operation of municipal services", and "offend[ed] publicly accepted standards of decency". *Zeber Appeal, supra.* Common Pleas Court properly reinstated this decision in finding unbecoming conduct as a matter of law, and we now reinstate its order.

Order of Commonwealth Court reversed and the order of the Court of Common Pleas of Allegheny County reinstated.

NIX, C.J., files a concurring opinion.

ZAPPALA, J., files a dissenting opinion.

PAPADAKOS, J., did not participate in the consideration or decision of this case.

NIX, Chief Justice, concurring.

I agree with the majority's conclusion that the *undisputed* evidence supports a conclusion as a matter of law that appellee's conduct was unbecoming an officer. I therefore join in the mandate ordering the reinstatement of the judgment of the Court of Common Pleas.

ZAPPALA, Justice, dissenting.

I dissent.

While I agree with the majority's discussion of our scope of review of a decision of the Civil Service Commission

(Commission), I must take issue with the application of these principles. As the majority correctly states, it is the duty of the Commission to make a record of the proceedings and determine findings of fact. Our function is limited to determining whether the Commission committed an error of law, abused its discretion, or entered a decision unsupported by substantial evidence. *Williams v. Civil Service Commission*, 457 Pa. 470, 327 A.2d 70 (1974); *Foley v. Civil Service Commission of the City of Philadelphia*, 55 Pa. Cmwlth. 594, 423 A.2d 1351 (1980). *See also* Local Agency Law, 2 Pa.C.S. § 754(b). Failing to meet this criteria we are bound to adopt the adjudication of the Commission.

The majority has concluded that "[t]he Commission ignored the evidence and admissions on what happened after the shooting and avoided any specific findings of fact on the post-shooting events." (At 30). With this conclusion I cannot agree. It is clear that part of the record before the Commission included the transcripts of both hearings before the Fire Trial Board. Furthermore, during the Commission hearing, the Appellee testified that he did not call the police or medical assistance because upon exiting the house, he heard that someone else was summoning them and shortly thereafter heard sirens. Clearly, the issue was raised and considered by the Commission. Contrary to the majority's Opinion, the Commission decided to believe the Appellee and determined that his conduct after the shooting did not demonstrate conduct unbecoming of an officer.

Furthermore, the majority holds that the record supports the conclusion that as a matter of law, the Appellee's conduct was conduct unbecoming of an officer. In so holding, the majority relies upon certain facts of record. The majority concludes that the Appellee's decision to engage in self-help to retrieve his stolen property belittled the position of firemen. The record before the Commission indicates that the Appellee had no intention of taking the law into his own hands. Instead, the Appellee first requested police assistance to retrieve his stolen property, only to be rebuffed. It was only then that the Appellee attempted to secure his stolen items. At no time does the record

reflect any intention to inflict retribution against the thieves. Furthermore, both at the criminal trial and at the Commission hearing, the Appellee testified that he was attacked while in the house and that the subsequent shooting was an accident.

Although I might reach a different conclusion than the Commission, if given the opportunity to observe the demeanor and credibility of the witnesses, under the law I must defer to its determination provided it is supported by substantial evidence. Based upon the foregoing, I cannot say as a matter of law that the Appellee's conduct was unbecoming of an officer and must therefore dissent from the majority Opinion.[1]

1. In reviewing this record, I found the City Solicitor's position in this case quite disturbing. In particular, I disagree with the prosecutorial rule he adopted, thereby effectively leaving the Fire Trial Board without legal counsel. If the Solicitor intends to continue as a quasi prosecutor, then the City better provide special legislation to provide a legal advisor for the Fire Trial Board. Furthermore, I must comment on a second peculiarity with this appeal. Although the Appellant now expresses deep concern about the Appellee's conduct after the shooting, such was not the case at the second Fire Trial Board hearing. At that hearing, the City was concerned only with the issue of back pay. Apparently, the issue of the Appellee's post-shooting actions only surfaced during the arguments before the Commonwealth Court.