529 A.2d 1180

Steven Mondevergine, Appellant *v.* Civil Service Commission, Appellee.

434

Argued June 12, 1987, before Judge COLINS, and Senior Judges BARBIERI and NARICK, sitting as a panel of three.

*F. Emmett Fitzpatrick*, for appellant.

*John P. Straub*, Deputy City Solicitor, for appellee.

OPINION BY SENIOR JUDGE NARICK, August 13, 1987:
This is an appeal from an order of the Court of Common Pleas of Philadelphia, Honorable ALFRED J. DIBONA,

which affirmed an order of the Philadelphia Civil Service Commission (Commission) dismissing Steven Mondevergine (Appellant) from the Philadelphia Police Department, Southwest Division. We affirm.

On September 16, 1982, Appellant, who was a member of the Southwest Police Division's Vice Section, arrested Tyrone Rowland (Rowland) for participating in an illegal numbers operation. It is this arrest which constituted the basis of Appellant's discharge from the Police Department. Rowland had previously contacted the Internal Affairs Division (IAD) of the Philadelphia Police Department and informed them that he was requested by the proprietor of an illegal numbers operation, Vincent Garrett (Garrett), to "take another fall".[1] Rowland had previously been involved in "taking a fall" for false arrest in August 1982.

Appellant was discharged from the Southwest Police Division, Vice Section for (1) conduct unbecoming an officer involving the acceptance of bribes or gratuities for permitting illegal acts, and knowingly and willfully making a false entry in a departmental record or report and (2) neglect of duty involving the failure to take appropriate action concerning illegal activity and indicating little regard for responsibility as a member of the Philadelphia Police Department.

---

[1] "Fall guy arrests" are illegal arrests in that they are pre-arranged between the police and the "vice figure". The "fall guy" who is paid for his trouble with planted number work is picked up at a specified time and place. The number work is not real (it might be old work), the circumstances (surveillances, observations) are not real, the sight of the arrest is usually moved on police paperwork to the site of a known vice operation. The "fall guy" gets paid to be arrested with less than 1,000 numbers on him, because there is a policy with the Philadelphia District Attorney's office whereby prosecution on numbers cases with less than 1,000 numbers seized will be withdrawn. The "fall guy" is freed after several hours and the police are able to record another statistical arrest on their records. The real numbers operator continues his illegal activities.

The Commission, after six days of hearings, affirmed Appellant's dismissal from the police force. On February 24, 1984, Appellant requested a rehearing. On March 7, 1984, the Commission granted a rehearing, but limited the scope of the rehearing to sufficiency of evidence relied upon by the Commission. On April 4, 1984, a rehearing was held and on June 20, 1984, the Commission affirmed its prior order. Appellant subsequently filed a timely appeal with the Court of Common Pleas of Philadelphia and the Court of Common Pleas affirmed the decision of the Commission. Hence, this appeal.

We must affirm the adjudication of the Commission unless (1) constitutional rights have been violated, (2) there is non-compliance with provisions of the Local Agency Law in the proceeding before the Commission, (3) an error of law has been committed, or (4) the findings of the Commission are not supported by substantial evidence. *Strauss v. Civil Service Commission,* 40 Pa. Commonwealth Ct. 560, 398 A.2d 1064 (1979).

An administrative decision is supported by substantial evidence when, from an examination of the entire record and inferences therefrom, a reasonable man might have reached the same decision. *Leroi v. Philadelphia Civil Service Commission,* 34 Pa. Commonwealth Ct. 190, 382 A.2d 1260 (1978). A public employer need not prove beyond a reasonable doubt that an employee committed a crime, but need only present evidence that the suspension or removal was for just cause. *Leroi.* Primary responsibility and decision as to the methods necessary to uphold police morale and efficiency and to maintain public confidence in the police department resides with the municipal officials. *See In re: Baker's Appeal,* 409 Pa. 143, 185 A.2d 521 (1962). Thus, the function of the court is merely to make sure that just cause for the dismissal exists under the facts

and law pertaining to the particular case. *Id.* However, police officers are expected to conduct themselves lawfully and properly and are held to a higher standard of conduct than ordinary citizens. *See Faust v. Police Civil Service Commission of the Borough of St. College,* 22 Pa. Commonwealth Ct. 123, 347 A.2d 765 (1975); *Cerceo v. Borough of Darby,* 3 Pa. Commonwealth Ct. 174, 281 A.2d 251 (1971); and *In re: Baker's Appeal.*

First, we will address Appellant's contention that the decision of the Commission was not supported by substantial evidence. In the case at hand, the Commission was presented with conflicting testimony. Appellant testified that on September 16, 1982, when he arrived at work, he was advised by his partner, Officer Desmond Smith, that they had been instructed by their supervisor, Lt. Theodore Murphy, to stake-out a news stand at 52nd Street and Baltimore Avenue for possible illegal lottery activities. Following Lt. Murphy's orders, both officers proceeded to the stake-out location.[2] Appellant testified that at approximately 11:15 a.m. he arrived at 52nd Street and Baltimore Avenue and that at approximately 11:30 a.m. he observed a number of individuals walking up to a black male (later identified as Rowland) and that this man appeared to be writing numbers. Becoming suspicious, Appellant testified he approached Rowland but Rowland started to flee. According to Appellant, Rowland was apprehended by Officer Smith and then transported to the police station in order to complete the necessary paper work regarding the arrest. The records completed by Appellant and Officer Smith revealed that Rowland was arrested at 11:35 a.m. at 52nd Street and Baltimore Avenue.

---

[2] At the time Appellant and Officer Smith were operating in plain clothes and proceeded to the stake-out location in separate and unmarked cars.

However, Rowland testified that he made arrangements to have his false arrest placed under surveillance by the IAD of the Police Department. On September 16, 1982, Rowland testified that while under surveillance by IAD, he met with Garrett at 5643 Chester Avenue. Pursuant to the plan, Rowland left 5643 Chester Avenue with Garrett at about 11:15 a.m. and proceeded to walk for several blocks at which time Garrett provided Rowland with numbers and money. Garrett left Rowland. Rowland returned to 56th Street and Chester Avenue where he was picked up by Officer Desmond Smith and transported to the police station.

Rowland's testimony was corroborated by three IAD officers: Inspector William McDonough, Sgt. John Gleeson, and Police Officer Alton Smith.[3] Inspector McDonough testified that he was one member of a four man team assigned to surveil the false arrest in a church rectory which had a view of Chester Avenue. Inspector McDonough testified that he observed Rowland and Garrett depart from 5643 Chester Avenue at around 11:05 a.m. or sometime shortly after 11:00 a.m. However, Officer McDonough stated that he was unable to view Rowland and Garrett from the church rectory as they continued to walk down Chester Avenue towards 57th Street. McDonough also stated that 52nd Street and Baltimore Avenue was approximately nine blocks or a ten minute ride from the area that IAD had under surveillance.[4]

Sgt. Gleeson, who was also a member of the surveillance team located in the church rectory, testified that

---

[3] It should also be noted that Corporal Joseph Zuggi, a handwriting expert, testified that the numbers claimed to be seized by Appellant from Rowland did not consist of Rowland's handwriting.

[4] The record indicates that the distance between the IAD surveillance location and 52nd Street and Baltimore Avenue was approximately 9 to 12 blocks.

at approximately 11:20 a.m. Rowland and Garrett left 5643 Chester Avenue. Gleeson indicated he observed Garrett hand something to Rowland on two separate occasions and that his observations occurred between 11:20 and 11:30 a.m. Sgt. Gleeson testified that he lost sight of Garrett and Rowland when they turned the corner at Chester Avenue and 57th Street and walked north on 57th Street.

Officer Alton Smith testified that he was also assigned to a surveillance team to conduct an investigation at 5643 Chester Avenue. Officer Smith stated that he and another officer were positioned in an unmarked van when at approximately 11:20 a.m. he observed Rowland and Garrett depart from 5643 Chester Avenue. The van then followed Garrett and Rowland as they proceeded to walk west on Chester Avenue and for several blocks thereafter. Officer Smith indicated that during the several block walk, he was able to observe Garrett and Rowland; however, because he wanted to remain at a discrete distance, he lost sight of the two men for approximately one minute due to a rise in the street. When Officer Smith regained sight of where the two men had been walking, Garrett was walking alone.

The Commission, in resolving the conflicts in testimony, concluded that Appellant's testimony was not credible. The Commission also noted that to believe Appellant would require the Commission to believe that Appellant and Officer Smith went to 52nd Street and Baltimore Avenue, conducted a twenty minute surveillance whereby between 11:15 and 11:35 a.m. Rowland was observed writing numbers and that Rowland was subsequently arrested.

The Commission opted to accept the testimony of the IAD officers, McDonough, Gleeson, and Smith. Each of these officers placed Rowland within the same time-frame at a location nine to twelve blocks away from

the location Appellant claims he arrested Rowland. Thus, in order to place Rowland at 52nd Street and Baltimore Avenue as Appellant contends would require Rowland to immediately travel the nine to twelve block distance and then commence writing numbers. The Commission reasoned that it also made no sense why Rowland would make pre-arrangements with the IAD to observe a false arrest and then mysteriously disappear, and that "[t]hese events defy reason; they are without motive or logic". It is well settled that questions of credibility are for the Commission. *Civil Service Commission v. Saladino*, 47 Pa. Commonwealth Ct. 249, 408 A.2d 178 (1979). Accordingly, after carefully reviewing the record in this case, including the witness testimony, we are satisfied that the Commission's order was supported by substantial evidence.

Appellant also argues that he was denied due process because the court of common pleas improperly considered evidence which was not part of the record. This evidence, according to Appellant, involved Judge DiBona's reference in his opinion to an earlier case involving a dismissal of a Philadelphia police officer from making a "fall guy arrest", *Ross v. Civil Service Commission*.[5] More specifically, Judge DiBona, in explaining "fall guy arrests" in his opinion, referred to the *Ross* case. Judge DiBona makes no other reference to the *Ross* case. We can find no indication that Judge DiBona was influenced by the *Ross* case in making his decision, nor did the substantial evidence existing to support the affirmation of the Commission include the *Ross* case. Clearly, a court may cite to related or relevant cases.[6] Accordingly, we see no error by Judge DiBona.

---

[5] Judge DiBona cited to *Ross v. Civil Service Commission*, February Term, 1984, No. 1215 (C.P. Philadelphia, November 9th, 1984). *Ross* was subsequently appealed and can be found at 98 Pa. Commonwealth Ct. 565, 511 A.2d 941 (1986).

[6] We note that Judge DiBona also decided the *Ross* case and therefore, Appellant could have requested his recusal.

Appellant next contends that he was denied due process by the conduct of the civil proceedings due to the fact that the transcript contains numerous places marked "inaudible" and that due to a tape recorder malfunctioning, fifteen minutes of the hearing was lost.[7] Due process requires that an accurate record be made of proceedings. It is provided in 2 Pa. C. S. §553 that local agency hearings "*may* be stenographically recorded and a full and complete record *may* be kept of the proceedings". (Emphasis added.) Thus, although a stenographic recording was made of the instant proceeding, it is not mandatory for local agency hearings to be stenographically recorded. Furthermore, after carefully reviewing the record in this case, we conclude that although inaudible notations do exist in the record, the issues in question were fully discussed. The inaudible notations did not affect the meaning, context or import of the testimony. *Cf. Sharp v. Department of Public Welfare,* 7 Pa. Commonwealth Ct. 263, 300 A.2d 909 (1973). Furthermore, Appellant was aware during the course of the hearing that the tape recorder malfunctioned and that fifteen minutes of testimony had been lost, yet failed to request an opportunity to recall the witness or take other steps to restore the lost testimony. Therefore, we cannot find that any violation of due process rights occurred.

_____

[7] We note that the cases cited by Appellant *Orage v. Commonwealth of Pennsylvania, Office of Administration,* 85 Pa. Commonwealth Ct. 497, 482 A.2d 1174 (1984), reversed on other grounds, 511 Pa. 528, 515 A.2d 852 (1986) and *Bell v. Bureau of Vocational Rehabilitation, Department of Labor,* 62 Pa. Commonwealth Ct. 388, 436 A.2d 1072 (1981) are not applicable. In *Orage* the case was remanded to the Board because the Board *completely* failed to make a stenographic record. *Bell* involved a remand to the State Civil Service Commission in order to make specific findings of fact regarding the denial of back pay.

Lastly, Appellant contends that his due process rights were violated because Officer McDonough testified that the entire surveillance activities at 56th Street and Chester Avenue on September 16, 1982 had been videotaped but the Commission despite requests from Appellant failed to require the production of these tapes. Pursuant to Section 8.8-409 of the Philadelphia Home Rule Charter, a party wishing to enforce a subpoena for the production of documents must seek such enforcement through the Court of Common Pleas of Philadelphia County. The Commission has no right to enforce subpoenas. Here, counsel for Appellant did not seek enforcement of the subpoenas through the Court of Common Pleas of Philadelphia County.[8] Hence, we must again reject Appellant's arguments.

Therefore, for the reasons set forth herein, we will affirm.

## ORDER

AND NOW, this 13th day of August, 1987, the order of the Court of Common Pleas of Philadelphia in regard to the above-captioned matter is hereby affirmed.

---

[8] The Commission also argued with regard to the video tapes that these tapes would merely corroborate the testimony of the IAD officers and would not establish the time the surveillance activities occurred.