595 A.2d 200

**PHILADELPHIA CIVIL SERVICE COMMISSION, Appellant,**

v.

**Stuart ROSS, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Dec. 15, 1988.

Decided Feb. 8, 1989.

Designated as Opinion to be Reported
July 29, 1991.

John P. Straub, Deputy City Sol., for appellant.

F. Emmett Fitzpatrick, Jr., Philadelphia, for appellee.

Before CRAIG and BARRY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The Civil Service Commission of the City of Philadelphia (Commission) appeals from a decision of the Court of Common Pleas of Philadelphia County which vacated the Commission's order dismissing Stuart Ross (Appellee) from the City of Philadelphia Police Department Southwest Division (Department) and directed Appellee's reinstatement with full back pay and emoluments. We reverse.

The record of the proceedings before the Commission reveals the following. On August 25, 1982 Appellee, who was a member of the Department's vice section, arrested Tyrone Rowland (Rowland) at the corner of 56th Street and Chester Avenue in Philadelphia for participating in an illegal lottery operation.[1] This arrest is the basis for Appellee's dismissal from the Department.[2] The day following his arrest, Rowland telephoned the Department's Internal Affairs Bureau stating that he was paid to take a fall guy arrest by his boss, Vincent Garrett, and that he had not written any numbers.[3]

1. The Department's vice section worked under cover and was responsible for investigating as well as taking police action against illegal activities such as numbers operations, prostitution and Liquor Code violations.

2. The record also reveals that in addition to Appellee there was an ongoing investigation of several police officers in the Department's vice section.

3. A fall guy arrest is an illegal arrest whereby the arrest is prearranged between the police and the vice figure. The fall guy who is paid for his trouble is planted with numbers work and is picked up at a specified time and place. The numbers work is not real (it might be old work), the circumstances (surveillances and observations) are not real, the site of the arrest is usually moved on police paper work to the site of a known operation. The fall guy gets paid to be arrested with less than 1,000 numbers on him because there is a policy with the Philadelphia District Attorney's Office whereby prosecution on numbers cases with less than 1,000 numbers seized will be withdrawn. The fall guy is freed after several hours and the police are able to record another statistical arrest on their records. The real numbers operator continues his illegal activities. *Mondevergine v. Civil Service Commission,* 108 Pa.Commonwealth Ct. 433, 529 A.2d 1180 (1987).

On December 12, 1982, Appellee was discharged by the Department for conducting a false arrest. The causes assigned by the Department for Appellee's dismissal were: (1) accepting bribes or gratuities for permitting illegal acts; (2) knowingly and willfully making a false entry in a departmental record or report; (3) failing to take appropriate action concerning illegal activity, including vice conditions and/or in failing to make a written report of same to commanding officer; and (4) committing repeated violations of departmental rules and regulations and other conduct indicating that he had little or no regard for his responsibility as a member of the Department.[4]

After conducting four days of hearings, the Commission upheld Appellee's dismissal.[5] Ross appealed the Commission's action and the court of common pleas reversed the Commission opining that there was "not even a scintilla of evidence" which would connect Appellee to any illegal or improper activities, that neither Rowland nor Garrett implicated Ross in any way to any illegal activity and that no evidence had been presented to show Appellee received any money from Garrett or anyone else connected with Rowland's arrest.

▇▇▇▇▇ A public employer such as the Department herein need not prove beyond a reasonable doubt that an employee committed a crime but need only present evidence that the suspension or removal was for just cause. *Leroi v. Philadelphia Civil Service Commission*, 34 Pa.Commonwealth Ct. 190, 382 A.2d 1260 (1978). Primary responsibility as to

4. The criminal charges brought against Appellee were dismissed.

5. These hearings will collectively be referred to as the (second) hearing before the Commission. In *Ross v. Civil Service Commission*, 98 Pa.Commonwealth Ct. 565, 511 A.2d 941 (1986) (*Ross I*), Appellee appealed the common pleas court's order upholding his discharge contending the Commission's reliance on polygraph test results was an error of law. This Court agreed and remanded the matter back to the Commission for the purpose of conducting a new hearing. Additionally, this Court noted in *Ross I* that the Commission's findings that Rowland did not write the numbers could not by itself support the conclusion that Appellee was involved in an illegal agreement to protect a lottery operation.

the methods necessary to uphold police morale and efficiency and for maintaining public confidence in the police department rests with municipal officials. *See Baker Case,* 409 Pa. 143, 185 A.2d 521 (1962); *Mondevergine.* Of course, police officers are held to a higher standard of conduct than ordinary citizens and are expected to conduct themselves lawfully and properly. *Mondevergine; Faust v. Police Civil Service Commission of the Borough of State College,* 22 Pa.Commonwealth Ct. 123, 347 A.2d 765 (1975); *Cerceo v. Borough of Darby,* 3 Pa.Commonwealth Ct. 174, 281 A.2d 251 (1971).

Our appellate review of an adjudication of a municipal civil service commission is limited to determining whether constitutional rights have been violated, an error of law committed or whether the necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 754(b); *Lewis v. Philadelphia Civil Service Commission,* 518 Pa. 170, 542 A.2d 519 (1988). Because the Department was the prevailing party before the Commission, we must view the evidence in the light most favorable to the Department, giving it the benefit of all reasonable inferences. *Id.*

The first issue we must consider on appeal is whether the Commission's decision to uphold Appellee's dismissal is supported by substantial evidence. In determining whether an administrative decision is supported by substantial evidence, it must be asked whether from an examination of the entire record and the inferences therefrom a reasonable man might have reached the same decision. *Leroi.* Substantial evidence is more than a scintilla of evidence and it is not enough if it merely creates a suspicion of the existence of the fact to be established. *See Lewis.*

We believe the evidence relied upon by the Commission did more than merely create a suspicion that Appellee knowingly made a "fall guy arrest". The Commission, confronted with conflicting testimony, was required as factfinder to resolve these conflicts, make inferences therefrom and draw credibility determinations. *See Civil Service*

*Commission v. Saladino,* 47 Pa.Commonwealth Ct. 249, 408 A.2d 178 (1979). In exercising this factfinding function, the Commission concluded that the testimony of Rowland and Garrett established a foundation for the events which resulted in Appellee's dismissal from the Department.[6]

Rowland testified that he was hired by Garrett to take a "fall" at the corner of 56th Street and Chester Avenue. According to Rowland, on August 25, 1982 he was arrested by a black police officer (Appellee) and another white police officer. Rowland also testified that while waiting for the arrest to occur, he did not take any numbers nor did anyone come up to him and give him money. At the time of his arrest, Rowland testified he did not have any sort of paper containing numbers bets on him and that the only things in his possession were a pack of cigarettes and a newspaper. Rowland also admitted that he never had any contact with Appellee regarding his arrest.

Garrett testified that he received a phone call from his boss telling him to have someone "take a fall" on August 25, 1982 and that he hired Rowland to take this "fall". When shown the numbers slip allegedly confiscated from Rowland by Appellee on August 25, 1982, Garrett denied giving this paper to Rowland on August 25, 1982 or at any other time. Garrett further testified he had no contact with Appellee regarding Rowland's arrest.

Inspector William McDonough testified that he was assigned to investigate the August 25, 1982 arrest of Rowland. As part of his investigation, the inspector submitted the numbers slip allegedly confiscated by Appellee from Rowland to Corporal Joseph Zuggi, a handwriting expert for the Department. Inspector McDonough also identified for the Commission various police documents relevant to the Rowland arrest—the investigation report, the arrest report, the complaint and the property receipt. According to the inspector, Appellee was dismissed from the Department for knowingly making false entries in Departmental records and documents. Inspector McDonough also indi-

6. Garrett did not testify at the first hearing before the Commission.

cated that the police reports and documents completed by Appellee did not indicate whether any money or a writing utensil was received from Rowland. Inspector McDonough testified that if Rowland did not have any money or a writing utensil in his possession at the time of his arrest, further investigation should have been conducted and Appellee's supervisor consulted.

The Department's handwriting expert, Corporal Zuggi, testified that the paper allegedly confiscated by Appellee from Rowland contained approximately 160 numbers bets and that the handwriting on the paper was not Rowland's. Corporal Zuggi went on to testify that the paper was rice paper and thus of such quality that one would at least need a moderately solid base in order to write on the paper without penetrating it.

Appellee testified that he joined the Department in June of 1981 and that he had only worked in the Department's vice section a little more than one week at the time of Rowland's arrest. According to Appellee, he was ordered to conduct a surveillance at 56th Street and Chester Avenue but he did not recall who communicated this order to him. Appellee further testified that he proceeded to 56th Street and Chester Avenue with Police Officer Desmond Smith, a black police officer.[7] It was Appellee's testimony that he observed Rowland standing on the corner of 56th Street and Chester Avenue with a piece of paper in the palm of his hand. Appellee testified people would come up to Rowland, that Rowland would write something on the paper and then take money from these people. Appellee admitted that he did not confiscate any writing instruments or money from Rowland at the time of his arrest. Appellee testified that

7. There is testimony in the record that Desmond Smith, a black officer, denied accompanying Appellee to the arrest scene involved herein. Also, Rowland testified that he was arrested by Appellee and a white police officer—who the Department alleges is police Officer Tom Cummings. Although relevant but not determinative, the property receipt admitted into evidence with respect to Rowland's arrest was signed by Officer Cummings. Also, the record reveals Desmond Smith was arrested in the fall of 1982 for participating in a "fall guy arrest" of Rowland.

even if Rowland had money on him he would not have taken it because he did not know he was supposed to.

Thus, Appellee's testimony clearly contradicts the testimony elicited from the Department's witnesses. The Commission, confronted with contradictory testimony, made a credibility determination, as was its prerogative, in favor of the Department. We believe the following testimony constitutes substantial evidence that Appellee knowingly participated in a "fall guy arrest". Rowland testified he did not write any numbers or take money for bets while waiting for the arrest to occur. Rowland's testimony further indicated that he did not have a slip of paper containing number bets, money or a writing utensil in his possession at the time of his arrest. Garrett corroborated Rowland's testimony that he did not give Rowland the slip of paper containing numbers bets which Appellee alleges he confiscated from Rowland. Corporal Zuggi testified the writing on the paper was not Rowland's. Additionally, Inspector McDonough's testimony revealed some "suspicious" circumstances surrounding Rowland's arrest. Appellee testified he did not confiscate any money or writing utensil from Rowland.

Finally, we need only briefly discuss an additional argument raised by Appellee that the Department violated the Pennsylvania Rules of Appellate Procedure. Specifically, Appellee contends that the Department failed to appropriately refer to the record in its brief as required by Pa. R.A.P. 2101, 2117, 2119 and 2132. We consider Appellee's contentions here to be specious and note that the Department has made sufficient reference to the record in its brief.

The order of the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby reversed and the decision of the Commission reinstated.

## ORDER

AND NOW, this 8th day of February, 1989, the order of the Court of Common Pleas of Philadelphia County in the

above-captioned matter is hereby reversed and the decision of the Philadelphia Civil Service Commission is reinstated.