## Dougherty v. Civil Service Commission of the Borough of Phoenixville

*Leonard Sugarman*, appellant.

*William C. Massinger*, appellee.

GAWTHROP, P. J., September 22, 1964.—Joseph E. Dougherty, a police officer of the Borough of Phoenix-

ville, was charged by a borough councilman with having improperly called to order a meeting of the Democratic Party of Phoenixville Borough on or about April 23, 1963, in the absence of the Phoenixville chairman of the party, and, further, with having also acted as secretary of the meeting in the absence of the duly elected secretary of the party, the meeting being one at which plans for a forthcoming Democratic Primary Election were discussed and formalized, in violation of the provisions of section 1184 of the Borough Code of 1927, P. L. 519, added July 10, 1947, P. L. 1621, sec. 39, as amended, 53 PS §46184. A hearing was held by the borough council after which council adjudged Dougherty guilty of both charges preferred and ordered his dismissal effective November 12, 1963. On November 13, 1963, Dougherty appealed to the civil service commission of the borough and after several hearings the commission on May 14, 1964, sustained the charges against Dougherty and ordered his dismissal from employment as a police officer of the borough. Thereafter he timely appealed to this court on July 2, 1964, from the commission's action. Argument was heard without the offer or taking of additional testimony, based upon stipulation of counsel for the parties that the matter should be considered by the court upon the record made before the commission. The case is now before us for decision upon that record.

The charges preferred against appellant and contained in the record are as follows:

"1. On or about April 23, 1963, Joseph Dougherty, in the absence of Alexander Kovach, the Phoenixville Chairman of the Democratic Party, called to order a meeting of said party at Union Hall, Bridge St., Phoenixville, Pa.

"2. On the above occasion Joseph Dougherty also acted as secretary in the absence of Mrs. Elizabeth Davis, secretary.

"3. That at the political meeting in question, plans for the forthcoming Democratic Primary election were discussed and formalized as will more fully appear from The Daily Republican edition of Wednesday, Apr. 24, 1963 in which news report is stated 'Also discussed at Tuesday night's meeting was the forthcoming primary election.' "

Section 1184 of the Borough Code, supra, provides: "No person employed in any police or fire force of any borough shall be suspended, removed or reduced in rank except for the following reasons ... (6) engaging or participating in conducting of any political or election campaign otherwise than to exercise his own right of suffrage," and further, "A person so employed shall not be removed for religious, racial or political reasons." Section 1185 of the code, as amended, 53 PS §46185, provides for a hearing if demanded before a civil service commission of the borough for any police officer removed from office, and a stenographic record of testimony at such hearings to be filed and preserved by the commission, and provides that all parties concerned shall have immediate right of appeal from the action of the commission to the court of common pleas where "the case shall be determined as the court deems proper."

At oral argument the borough solicitor properly conceded that the record does not support a finding of guilt of the second charge that appellant acted as secretary of the Democratic Party meeting on the date in question. Clearly that charge was not proved. However, the borough asserts that the charge of engaging or participating in conducting of any political or election campaign otherwise than to exercise appellant's own right of suffrage is sufficiently proved. Two questions are involved: (1) Whether appellant's conduct if proved amounted in law to a violation of the statutory prohibition and, (2) the credibility of the witnesses

and the proper inferences from their testimony, that being paramount in resolving the issues.

The clear purpose of the civil service provisions of the Borough Code "is to insure the continuance in office of those individuals who are faithful and conscientious in the discharge of their duties and to free these public officers from the fear of political and personal prejudicial reprisal": Gagliardi v. Ambridge Borough, 401 Pa. 141, 145. The scope of the provisions of section 1184 of the code is defined in only one reported case which we have found. In Hood Appeal, 78 D. & C. 318, at page 323, it was said: "The prohibition relative to political activities is all embracing. The only thing a police officer is permitted to do is to 'exercise his own right of suffrage.' The doing of *any affirmative act in connection with* any political campaign or election is prohibited." (Italics supplied.) See also: McCrory v. Phila., 345 Pa. 154, as to the nature of prohibited acts.

This appeal was submitted on the record made before the commission, no additional evidence being offered or taken before the court. Section 1185 of the Code, as amended, directs that the case "shall be determined as the court deems proper." To sustain the action of the Commission the charge must have been proved by "substantial evidence": Appeal of Ditko, 385 Pa. 435, affirming per curiam on the opinion of Judge Hess of the court below: 5 D. & C. 2d 569. The duty of the court is to determine whether the evidence shows "just cause" and not mere "suspicious circumstances": Philadelphia Civil Service Commission v. Connolly, 1 D. & C. 2d 399. The Ditko case involved the Act of June 28, 1951, P. L. 662, sec. 4408, 53 PS §39408, applicable to third class cities, providing that the court shall hear the charges "de novo." It held that when there is sufficient competent evidence before the court to indicate that the city council had not abused its

discretion in discharging an officer, the court could not properly set aside the action of that duly elected deliberative body; that no court should substitute its discretion for that of the city council, a body clothed with judicial, deliberate and discretionary powers in such matters, where it has exercised those powers without abusing its discretion; but that there must be substantial evidence and not mere suspicious circumstances to warrant the disciplinary action taken because the officer is entitled to protection against unfounded attack. A fortiori, it is our duty under the language of the Borough Code which, rather than providing for a hearing de novo, directs us to determine the matter "as the court deems proper," to sustain the action of the commission if the evidence before us would warrant a finding similar to that made by the commission. Unless the evidence is such that if the case were being tried by a jury the court would be required to enter a nonsuit, enter judgment n. o. v., or sustain a demurrer, the court is required to affirm the findings and action of the commission even though the court as an independent fact-finding body might conclude otherwise: Ditko, supra, at 575.

Broad discretion is vested in the administrative officials of the municipality as to what constitutes just cause for dismissal under the civil service act and a court cannot substitute its judgment for that of the duly constituted borough authorities in whom the discretionary power is vested. If there is admissible evidence, the weight of which the court is without authority to consider, to move the deliberate powers of the commission, without manifestly abusing its discretion, in sustaining or reversing the action of the [council], then the courts may not reverse such action: Zeber Appeal, 398 Pa. 35, 42. Even where an appeal from the order of the commission is heard de novo, the court does not have absolute discretion in

adjudging the merit and validity of the commission's order. It must give due respect and weight to the action of the duly constituted municipal body which is authorized to act with respect to charges against members of its police force. What constitutes ample cause for removal within the limits fixed by the act must necessarily be largely a matter of discretion on the part of the head of the department. This is especially true of the police service where a semimilitary discipline is to be encouraged and greater strictness of enforcement and severity of punishment is thereby permitted: Bell Appeal, 396 Pa. 592, at 613-14.

Both appellant and Councilman Chico, who preferred the charges, were members of the Democratic Party. The charges were admittedly brought out of personal animosity in retaliation for appellant's refusal to disclose to Chico the source of a campaign cartoon of which Chico was the subject. In spite of the motive involved, however, if either of the charges is sufficiently proved, the animus which prompted it is no defense. Its real importance is its bearing on the credibility of the witnesses who testified in support of the charges. Some of the evidence came from persons friendly to Chico and some from persons friendly to appellant. The facts depended primarily on determination of their credibility by the body who saw and heard the witnesses.

From the evidence the commission could properly find the following facts: that the 22 members of the Democratic County Committee, representing the 11 election districts of Phoenixville, comprised the Phoenixville Democratic Committee under the direction of Alexander Kovach as local chairman; that the chairman sent out written notice of a regular meeting of the Phoenixville Democratic Committee to be held April 23, 1963, at 8 p.m., a date exactly four weeks before the May, 1963, primary; that due to a special meeting of borough council of which he was a member, Mr.

Kovach did not arrive at the meeting hall until about 9:15 p.m., although others including committee members, workers and Democratic candidates for nomination in May for both local and county offices arrived at various times after 8 p.m. and remained; that at the request of Mr. Kovach appellant unlocked the hall, opened the meeting room and remained there until the meeting concluded; that while there was no quorum of 6 committee members present, some 25 or 30 persons attended; that there was unrest among them because the chairman had not arrived and the meeting was delayed and several persons suggested that the meeting begin; that neither the local vice-chairman or treasurer arrived until long after 8 p.m. and the secretary did not attend at all due to a bereavement; that sometime after 8:30 p.m. appellant at the urging of the group stood at the officers' table at the head of the room, stated in substance that there were sufficient persons present to proceed, called the meeting to order, read to the group the content of the notice of the meeting and called upon one, Morgan, to report on the activities of his "watchdog committee" which had previously been appointed by Mr. Kovach, acting for the Phoenixville Democratic Committee, to investigate and contest the adoption by the Phoenixville School Board of an occupation tax; that Morgan reported on the matter and answered questions for some 40 to 45 minutes until chairman Kovach arrived, after which the chairman assumed control of the meeting and appellant did nothing more; that political fund raising programs of the committee were discussed and at least one contribution of money for tickets was made by a person present and received on behalf of the committee; that all local candidates for nomination for borough offices at the May 1963 primary and several candidates for nomination for county offices were introduced, and each of the latter group spoke briefly requesting support of their

candidacies; that it was declared that so far as local offices were concerned the primary would be an "open" one and all candidates for local offices were asked to pledge their support in the November 1963 municipal election to the successful nominees.

Appellant argues that in the absence of a quorum there could be no formal "meeting" of the committee so that he could therefore in no event have been found to have called a meeting to order. This argument closes its eyes to reality. There was in fact a meeting held for political and election campaign purposes and we cannot conceive that the purpose of section 1184 of the code was intended to depend upon such a technical distinction. Rather, as its language indicates, it proscribes "engaging or participating in conducting of any political or election campaign" and the meeting in question did in fact and in law constitute a part of conducting a Democratic primary election campaign. Appellant's affirmative act of opening the meeting amounted to "engaging or participating" in conducting the meeting otherwise than merely to exercise his own right of suffrage: Hood Appeal, supra; cf. Larkin Appeal, 413 Pa. 612, affirming per curiam the judgment of Clark, P. J., in September term, 1962, nos. 209, 210, 211, in the Court of Common Pleas of Indiana County.

The credibility of the witnesses and their testimony was for the commission, who saw and heard them. All questions of interest, bias, prejudice, candor, fairness, opportunity to observe, corroboration and conflicts in the evidence, as well as the proper inferences to be drawn from the evidence, were for them. Our careful review of the lengthy record convinces us that there was evidence produced which, if credited, together with the legally permissible inferences arising from it, constituted substantial evidence and just cause for finding appellant guilty of the first charge. On the evidence

presented, were this a jury trial, we would not be required to enter a nonsuit, or judgment n. o. v., or sustain a demurrer. Issues of fact were present in the record to be determined by the appropriate fact-finding body and we are required to affirm the findings of the commission upon the substantive evidence before it, even though as an independent finder of facts we might conclude otherwise: Ditko, supra. The evidence presented, including that of appellant himself, leads us to conclude that the commission was justified in finding appellant guilty of the first charge only.

The final question presented is whether or not the commission abused its discretion in dismissing appellant from the police force instead of imposing the lesser punishment of suspension. The court cannot substitute its judgment for that of the borough authorities as to what should be just cause for dismissal in the absence of an abuse of their discretion, and appellant's previous suspension, though not relevant on the question of his guilt or innocence of the charge, may be considered in determining the appropriate punishment: Ditko, supra, 576; Poerio Appeal, 3 D. & C. 2d 79; In re Brosius Appeal, 22 Northumb. 193. No consideration has been given by us to the previous suspension in determination of his guilt or innocence of the charges made.

In Dougherty v. Civil Service Commission of Borough of Phoenixville, 11 Chester 33, this court affirmed the commission's action in sustaining the action of the mayor and council in suspending appellant for three days on October 12, 1961, for conduct unbecoming an officer in that he did, in violation of a resolution of council, while in uniform and at three different times during September, 1961, solicit bakery driver-salesmen on the streets of Phoenixville for donations of frankfurter rolls for a clambake. Although not appearing in the record of that case, it is clear from the record

now before us that the clambake involved was one held by the Phoenixville Democratic Committee for political purposes. The evidence further shows that appellant had been sufficiently closely connected with that committee's activities that in August, 1963, he was appointed, though he declined to serve, as a member of its platform committee, and that when in late September 1962, Sophia Grabowski, the corresponding secretary of that committee, resigned her office, he was sent by the chairman to, and did, obtain from the resigning secretary her records to be returned to the committee. Under those circumstances we cannot say that the borough authorities abused their discretion in dismissing him from the police force although we might have imposed a less stringent penalty. We "should not lightly set aside an order of dismissal rendered at the hands of a duly . . . constituted body of public officials who are charged with conducting the affairs of the police department and maintaining necessary discipline so as to assure the functioning of the vital protection of an efficient police force": Ditko, supra, 576. Dismissal was affirmed in Larkin Appeal, supra, where the officers involved were guilty of a similar charge but had no previous suspensions. We conclude that the action of the commission in dismissing appellant from his employment as a police officer of the Borough of Phoenixville should be affirmed.

And now, September 22, 1964, the appeal of Joseph Dougherty is dismissed.