**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2145-15T2

IN THE MATTER OF
GARY VICTOR,
MERCER COUNTY DEPARTMENT
OF PUBLIC SAFETY

_____

Submitted June 1, 2017 — Decided July 14, 2017

Before Judges Lihotz and Whipple.

On appeal from the Civil Service Commission,
Docket No. 2012-2640.

Alterman & Associates, L.L.C., attorneys for
appellant Gary Victor (Stuart J. Alterman, of
counsel and on the briefs; Matthew R. Dempsky,
on the briefs).

Arthur R. Sypek, Jr., Mercer County Counsel,
attorney for respondent Mercer County
Department of Public Safety (Kristina E.
Chubenko, Assistant County Counsel, of counsel
and on the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent New Jersey Civil
Service Commission (Pamela N. Ullman, Deputy
Attorney General, on the statement in lieu of
brief).

PER CURIAM

Petitioner Gary Victor appeals from a December 17, 2015 final administrative action of the Civil Service Commission (Commission) upholding his ten-day suspension. We affirm.

Petitioner began working as a correction officer in Mercer County in 1993, and was promoted to sergeant in 2007, a position he held when this matter arose. On January 24, 2011, petitioner was the Receiving and Discharge (R&D) Sergeant. On that night, he mistakenly discharged an inmate instead of turning him over to the Plainsboro Police Department as required by the inmate's discharge paperwork.

On or about May 11, 2011, the County of Mercer (County) served petitioner with a preliminary notice of disciplinary action, in accordance with N.J.A.C. 4A:2-2.5(a). The County sought a ten-day working suspension and charged petitioner with: 1) conduct unbecoming a public employee, N.J.A.C. 4A:2-2.3(a)(6); 2) neglect of duty, N.J.A.C. 4A:2-2.3(a)(7); and 3) "[o]ther sufficient cause: violation of administrative procedures and/or regulations involving safety & security (D-6) [Standard Operating Procedure] 210," "[n]eglect of duty, loafing, idleness, or willful failure to devote attention to tasks which would result in danger to

persons or property.  (B-2)," N.J.A.C. 4A:2-2.3(a)(12).[1]  After a departmental disciplinary hearing, the County served petitioner with a final notice of disciplinary action imposing a ten-day working suspension beginning on April 21, 2012.  Petitioner appealed and the matter was transferred to the Officer of Administrative Law for a de novo hearing.

We discern the following from the hearing record.  Lieutenant Steven Boseke was shift commander at the correctional facility on January 24, 2011.  Boseke testified three different individuals review an inmate's record to ensure the particular inmate is to be discharged.  Here, Boseke, Mary Gales, a civilian employee, and Lieutenant P.A. Barber signed the inmate's discharge paperwork.  Boseke testified the inmate's paperwork stated, "Turned over to Plainsboro Township," however, on the top right corner there was a handwritten note, which read, "No ride, Annex."  Boseke did not recall seeing the handwritten note prior to signing the discharge paperwork and stated, if he had seen it, he would have questioned it, because it meant the inmate was to be released to the street.

Boseke identified a body receipt form used when officers from another municipality come to retrieve an inmate.  The retrieving

---

[1]  At the time petitioner received the preliminary notice of disciplinary action, the regulation in which he was cited for was N.J.A.C. 4A:2-2.3(a)(11), however, that section has since been amended and is now N.J.A.C. 4A:2-2.3(a)(12).

officer must sign the form to demonstrate he has taken custody of the inmate. The body receipt should be attached to the discharge paperwork. Once all forms are collected and signed, the paperwork is sent to the R&D Sergeant, who on January 24, 2011, was petitioner. Petitioner's signature appears at the bottom of the inmate's discharge paperwork dated January 24, 2011.

That night, petitioner called Boseke and told him he mistakenly discharged the inmate to the streets.[2] Boseke instructed petitioner to call the transportation team and see if the inmate was still in the van. After speaking with petitioner Officer Elgee Styles called Boseke and reported the inmate had been dropped off. Boseke advised Styles to call Trenton Police Department for backup if needed. Trenton Police assisted in re-arresting the inmate who was brought back to the correctional facility. Boseke then wrote up an incident report, and instructed the officers involved to provide reports. All of the reports were turned over to Captain Richard Bearden.

Mary Gales works in the records department and prepared the inmate's discharge paperwork. Boseke testified Gales crossed out "This certified that I, Plainsboro, received" because she had

---

[2] Boseke testified when an inmate does not have a ride home from the correctional facility, the transportation team will drop the inmate off in downtown Trenton.

written it in the wrong place. Additionally "No ride, Annex" was written on the right side of the document, indicating the inmate needed to be transported by van. Boseke testified Officer Curtis Diaz, working in Control Room 3 on January 24, also reviewed the inmate's paperwork to ensure all information was correct. Boseke stated he did not review the log book entry from January 24, which states the inmate was "Turned over to the Street."

Styles was a transportation officer on January 24, 2011. Styles transported four discharges, including the inmate in question, to downtown Trenton to be dropped off and her way back, she received a phone call from petitioner advising the inmate needed to be returned to the correctional facility. Her partner, Officer Gary Vannozzi, turned their vehicle around and they spotted the inmate walking. When they called out to the inmate asking him to come back to the van, the inmate shook his head no and began to run. A Trenton Police car was in a nearby parking lot and after Styles ran over to explain the situation, the officer got on their radio and Trenton Police apprehended the inmate.

Styles testified the inmate was on the street for about ten minutes. Styles and Vannozzi returned the inmate to the correctional facility, where petitioner told Styles, "[i]t was a mistake, mistakes happen."

Lieutenant Farah Fioravanti, a Mercer County corrections officer, authored an investigation report about the January 24 incident. As part of her investigation, Fioravanti interviewed petitioner, Boseke, Officers Jeffrey Lane, Steven Rinz Diaz, Styles, and Vannozzi. According to Fioravanti, petitioner admitted he wrote "No ride, Annex" on the discharge paperwork and only became aware he mistakenly discharged the inmate when the Plainsboro Police Department arrived to pick him up.

Fioravanti concluded petitioner violated Standard Operating Procedure (SOP) 210: "Post Orders - Sergeant (General)." SOP 210 D.2. provides: "'R&D' Sergeant includes management and supervision of Detention Floor, Property Storage, Control Room 3, and the receiving and discharge of inmates. The R&D Sergeant is required to coordinate efforts closely with the Classification/Records Lieutenant." Fioravanti rejected petitioner's allegation someone altered or switched the discharge paperwork after the inmate had left.

Petitioner's internal affairs statement recounted the discharge paperwork he received showed the inmate was to be released to the street; though he reported, "it was possible" he overlooked the fact the discharge paperwork said "Turn over to Plainsboro Township." In his statement, petitioner recounted he did not see the inmate's active charge in the computer system

6 A-2145-15T2

until after the inmate was discharged and in the transportation van.

Lane, a property officer at the correctional facility reviewed the inmate's discharge paperwork and did not notice the inmate was supposed to be discharged to Plainsboro Police Department but he could not rule out the discharge paperwork did say, "Discharge to Plainsboro."

Diaz was working as the Control Room 3 officer on January 24, 2011. Diaz testified as R&D receives discharge paperwork for various inmates, he would check their picture cards to verify the correct inmate was being discharged, as well as check their jail number. Diaz did not notice the inmate was supposed to be turned over to the Plainsboro Police Department. Petitioner was Diaz's supervisor on January 24, 2011.

Petitioner testified he learned the inmate was mistakenly discharged when the Plainsboro police arrived to pick up the inmate. According to petitioner, he asked Diaz for the inmate's discharge paperwork, which then had "Plainsboro" written on it. Petitioner testified the discharge paperwork Diaz handed him was not the original paperwork he saw for the inmate and it now included a body receipt not attached previously. On cross-examination, petitioner acknowledged he never attempted to locate the original discharge paperwork. He also testified he wrote "No

7

ride, Annex" on the discharge paperwork and the discharge paperwork from Diaz said the same thing. The only difference between what petitioner saw originally and what he received from Diaz was the body receipt.

Following the testimony, the administrative law judge (ALJ) issued his initial decision on November 5, 2015, finding the County established, by a preponderance of the evidence, petitioner violated the rules and regulations charged in the final notice of disciplinary action, except N.J.A.C. 4A:2-2.3(a)(12), "[o]ther [s]ufficient [c]ause - (c) neglect of duty, loafing, idleness or willful failure to devote attention to tasks which would result in danger to persons or property." The ALJ concluded the ten-day working suspension was appropriate.

Petitioner filed exceptions with the Commission, and on December 17, 2015, the Commission issued its final administrative action accepting and adopting the ALJ's findings of fact and conclusions. This appeal followed.

Petitioner argues the Commission's findings are arbitrary, capricious, and unreasonable, as the County failed to establish by a preponderance of the evidence the charges cited against him in the final notice of disciplinary action. We disagree.

Our review of agency action is limited. "An appellate court ordinarily will reverse the decision of an administrative agency

only when the agency's decision is 'arbitrary, capricious or unreasonable or is not supported by substantial credible evidence in the record as a whole.'" Ramirez v. N.J. Dep't. of Corr., 382 N.J. Super. 18, 23 (App. Div. 2005) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). "An administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference.'" Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J. Super. 93, 102 (App. Div. 1997)). Therefore, "if substantial credible evidence supports an agency's conclusion, a court may not substitute its own judgment for the agency's even though the court might have reached a different result." Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992) (citing Clowes v. Terminix Int'l, 109 N.J. 575, 587 (1998)).

Petitioner argues the County did not meet its burden of proof as to N.J.A.C. 4A:2-2.3(a)(6), conduct unbecoming a public employee, as he acted reasonably and in good faith in relying upon the discharge paperwork he was provided.

Conduct unbecoming an officer has been defined as "any conduct which adversely affects the morale or efficiency of the [correctional facility] . . . which has a tendency to destroy public respect for municipal employees and confidence in the

operation of municipal services." In re Emmons, 63 N.J. Super. 136, 140 (App. Div. 1960) (quoting In re Zeber, 156 A.2d 821, 825 (Pa. 1959)). The conduct in question can be sufficient if it is "such as to offend publicly accepted standards of decency." Karins v. City of Atl. City, 152 N.J. 532, 554 (1998) (quoting Zeber, supra, 156 A.2d at 825).

Petitioner argues he relied in good faith on the "No ride, Annex" note on the discharge paperwork and believed the inmate was to be transported to the street. However, at the hearing, petitioner admitted he wrote "No ride, Annex" on the paperwork. Petitioner could not have relied in good faith on the paperwork if he was the one who wrote the note. Additionally, the ALJ did not find petitioner's testimony credible. Based upon our deference to the ALJ's credibility determination, see Clowes, supra, 109 N.J. at 587, along with the testimony of the other individuals on duty on January 24, 2011, we are satisfied the County met its burden of proof as to a charge of N.J.A.C. 4A:2-2.3(a)(6).

Petitioner argues the County did not meet its burden of proof as to N.J.A.C. 4A:2-2.3(a)(7), neglect of duty. There is sufficient evidence in the record to establish petitioner neglected the performance of his assigned job duties, namely ensuring the inmate was properly turned over to the Plainsboro Police Department per his discharge paperwork. See e.g., In re

10

Carter, 191 N.J. 474 (2007) (neglect of duty found where a police officer fell asleep while on duty). The evidence in the record supports the Commission's finding petitioner's actions on January 24, 2011 constituted neglect of duty.

Petitioner also argues the County did not meet its burden of proof for the charge of other sufficient cause, N.J.A.C. 4A:2-2.3(a)(12), by violating SOP 210. Petitioner argues he exercised due diligence but was misled by errors in the discharge paperwork written by others. However, petitioner admitted during testimony the error was his own notation. His assertion the discharge paperwork was switched from the time he initially reviewed the paperwork to when he learned of the mistake is unsupported by the record. Petitioner was the sergeant in charge of the R&D unit on January 24, and was therefore responsible to ensure correct discharge paperwork. SOP 210 D.2 states, "'R&D' Sergeant includes management and supervision of Detention Floor, Property Storage, Control Room 3, and the receiving and discharge of inmates. The R&D Sergeant is required to coordinate efforts closely with the Classification/Records Lieutenant." Sufficient evidence in the record supports the ALJ's determination petitioner fell short of his job requirements per SOP 210, when he discharged the inmate meant to be transferred to a police department, therefore satisfying a charge under N.J.A.C. 4A:2-2.3(a)(12).

11

After careful review of the record, we do not consider the Commission's decision to adopt the ALJ's findings of fact and conclusions arbitrary, capricious, or unreasonable.

As to the penalty, we find the ten-day working suspension to be consistent with our case law. In Carter, the New Jersey Supreme Court discussed progressive discipline for an officer who was fired for sleeping on duty. Carter, supra, 191 N.J. at 482. The Court found "some disciplinary infractions are so serious that removal is appropriate notwithstanding a largely unblemished prior record." Id. at 484. Reviewing sanctions imposed as a consequence of disciplinary action, we ask, "whether such punishment is 'so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness.'" In re Polk License Revocation, 90 N.J. 550, 578 (1982) (quoting Pell v. Bd. of Educ., 313 N.E.2d 321, 356 (N.Y. 1974)). Additionally, "[i]n matters involving discipline of police and corrections officers, public safety concerns may also bear upon the propriety of the . . . sanction." Carter, supra, 191 N.J. at 485. We do not substitute our "own views of whether a particular penalty is correct for those of the body charged with making that decision." Id. at 486.

Viewing the record in light of our Supreme Court's discussion in Carter, we do not consider the ten-day suspension to be

disproportionate because of the public safety concerns. Here, an inmate was released to the streets of Trenton and when the transportation team was notified of the mistake, the inmate began running from the officers. That the inmate was able to be recaptured and returned to the correctional facility without incident does not diminish the potential risk to the community. We find no error in the Commission's final administrative action upholding the ten-day suspension.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION