Perrine v. Broadway Bank.

---

ORLANDO PERRINE, appellant,

*v.*

THE BROADWAY BANK OF BROOKLYN, respondent.

1. The regular way of serving an order on file in the court of chancery is. by leaving with the party a copy thereof, certified by the clerk.

2. A party will not be in contempt by a refusal to obey an order not so. served, unless it has been served in accordance with a special order of the chancellor.

Perrine *v.* Broadway Bank.

On appeal from an order, in *Broadway Bank* v. *Perrine*, advised by Vice-Chancellor Van Fleet, who delivered the following opinion:

The facts on which the complainant relies to show that the defendants have willfully disobeyed the order of the court are not disputed. It is unnecessary, therefore, to consider whether or not the petition is properly verified.

The subpœna in this case was served on the defendants on the 15th day of February, 1893, and returned on the 28th of the same month. The defendants have, therefore, been in court since February 28th last. The order requiring the defendants to appear before a master and make discovery was made on the 3d day of March last, and was filed on the 6th. On its being filed it became a part of the record in the case, and, for certain purposes, its filing operated as notice to the defendants.

The question is, was the order served on the defendants in such manner as to make it their duty to obey it? The proofs show that a certified copy was given to the sheriff for service, and that copies of that copy were served on the defendants by an undersheriff. It does not appear that the certified copy was shown to the defendants when service was made. I shall assume that it was not. The defendants did not appear before the master. They were advised by counsel that, as the copy of the order served on them was not authenticated in any way, nor a certified copy shown to them, they were not bound to obey it.

I cannot concur in that view. On the contrary, I think that the defendants had sufficient notice of the order to make it their duty to obey it. The order is in the nature of a mandatory injunction. It commanded the defendants to appear before an officer of this court at a certain time and place. The rule is well settled that a defendant, who knows that an injunction has issued, is bound to obey it from the moment he receives notice, either oral or written, of its issue and its terms. An actual service is not necessary to put him in contempt for a breach of its command. The order in this case purported to have been made in a cause that the defendants knew was pending against

Perrine v. Broadway Bank.

them; they also knew that the complainant had asked by its bill that such an order might be made; the order was served on them by that officer of their county whose duty it is to serve the orders and processes of the superior courts. It is apparent, therefore, that there was nothing about the paper or the manner of its service to suggest a doubt of its authenticity. The defendants do not say that they doubted its authenticity. They undoubtedly believed it to be authentic. The least doubt on that point would have sent an inquiry at once to the clerk's office, where the order had been on file for more than ten days. The case is one, therefore, where the defendants did not refuse to obey because they believed no order had been made, but because they believed that, in consequence of a defective service, they could contemn it with impunity. Neither statute nor rule of practice prescribed any special form of authentication or mode of service for orders like the one under consideration. As a general rule, I think it may be safely said that when an order is made by a court requiring a party to a suit pending before it to do or to refrain from doing a particular thing, all that is required to impose the duty of obedience is that the order shall come to his knowledge in such manner that he knows what he is required to do or to refrain from doing, and as would lead a man of ordinary good sense to believe that the court had made it. Both these conditions existed in this case. The copy served told the defendants plainly what they were required to do. They were bound to expect such an order would be made, and the official character of the person making the service furnished strong evidence of its authenticity. I think the defendants must be adjudged guilty of contempt. To hold otherwise would allow a defendant to contemn such an order with impunity, though he had the most perfect knowledge that it had been made and also of its terms.

The fact that the defendants acted under the advice of counsel, while it neither justifies nor excuses their disobedience, must receive consideration when the punishment is adjusted. Before deciding what punishment shall be inflicted, I propose to give the defendants an opportunity to comply with the requirements

of the order. If they will go before the master on Thursday, the 25th instant, at ten in the morning, and submit to an examination, as they should have done on the 29th day of March last, that fact will be taken into consideration on Wednesday, May 31st, 1893, at ten in the morning, when the defendants must appear in person before the court, at the chancery chambers in the city of Newark, to be punished for their contempt.

*Mr. Frank Bergen,* for the appellant.

*Mr. John S. Voorhees,* for the respondent.

BEASLEY, C. J.

On this appeal, but a single question is presented for solution.

The respondent having obtained a judgment, and an execution thereon having been returned unsatisfied, exhibited his bill in the court of chancery to compel the discovery by the appellant, the judgment debtor, of his property. By force of the statute (*Rev. p. 121 § 90*) the chancellor thereupon made an order requiring the appellant to appear and make discovery, on oath, concerning his property and things in action, before a master, at a time and place designated. Thereupon, a certified copy of this order was put in the hands of the sheriff for service, who, through the medium of an undersheriff, served the appellant by leaving a true copy of the order with him, but without showing him the original or in any manner intimating that he had it in his possession.

In this condition of things, the appellant, acting on the advice of counsel, did not attend before the master as directed, and, because of such failure, was cited by the respondent to appear and show cause before the vice-chancellor why he should not be adjudged to be in contempt. Upon hearing he was declared to have been contumacious, and was accordingly fined. The present appeal brings before us this sentence.

That the order in question was not served according to law, is not open to question. The practice on this head has been immemorially settled. The ancient and modern course of procedure

Perrine v. Broadway Bank.

was and is as follows : Upon an order of this nature being signed, it is to be filed, and a copy certified to as true by the clerk is then to be served on the party. These steps may, of course, be modified by the special direction of the chancellor, but in the absence of such substituted method the correct and only mode is that just stated. So far as is known, there has never been an approved departure from the rule.

·In the present instance this inveterate and simple course was not taken. A copy of the order, attested by the clerk, was sent to the officer, and, instead of leaving it with the appellant, he copied it and left such copy. The paper thus left was not certified to in any mode, nor did the officer exhibit the copy in his hands.

The ground upon which the vice-chancellor concluded that the appellant had placed himself in a contumacious attitude with respect to the court, was that the circumstances showed that he had no reason to doubt, and did not doubt, the authenticity of the copy of the order that was left with him, and that therefore it was his duty to obey it. The doctrine is thus expounded : "As a general rule, I think it may be safely said that when an order is made by a court requiring a party to a suit pending before it to do or to refrain from doing a particular thing, all that is required to impose the duty of obedience is that the order shall come to his knowledge in such manner that he knows what he is required to do or to refrain from doing, and as would lead a man of ordinary good sense to believe that the court had made it."

It is obvious that if such be the principle, then there is nothing like an established formula of practice in relation to these cases. The entire subject is in the air. Who can tell what will or will not be a sufficient service ? The assurance of the lawyer of the party obtaining the order, that a paper purporting to be a transcript of the order, although entirely unauthenticated, would doubtless in most cases carry conviction of its genuineness. So unattested copies sent by mail would many times have the same effect. Under the prevalence of such a system the most deplorable laxity would soon prevail, and it is not therefore a matter

·of surprise that no authorities have been cited in its support.
In the brief of counsel the service of orders of this nature are
likened to the service of injunctions, and it is claimed that with
·respect to such procedures the rule propounded by the vice-chan-
·cellor has obtained.    There can be no doubt that in certain
junctures the usual rule requiring an exact service of injunctions
has been relaxed; but such relaxations are applicable only to
·that form of such writs whereby the party is prohibited from
·pursuing a certain line of conduct; but such relaxations are the
·creatures of necessity, and therefore have no place in the regu-
lating of mandatory injunctions.    The expressions of judicial
·opinion on that subject in this state have all related to common
injunctions, that is, writs containing an order not to do a par-
ticular thing, or series of things; they mark out deflections from
the ordinary path, and are obviously the creatures of necessity
and should not transcend the limits of such necessity.    In *Harvey
v. Kauffman, 2 Beas. 398*, Chancellor Green, with characteristic
precision and accuracy, defines the usual practice touching the
service of this process.    He says: "To effect a regular service
·of an injunction, the writ itself, under the seal of the court, must
be shown to the party against whom it issues, and a true copy
thereof delivered to him."    He then proceeds to show that in
·cases where such formal service cannot be made the court will
direct a different and less direct method of notification to be
pursued.    This is the English and American practice.    *Endicott
v. Mathis, 1 Stock. 114; Railway Company v. Johnson, 8 Stew.
Eq. 422; Ashborne v. Tenant, 14 Ves. 136; 2 Ves. & B. 348;
Skip v. Harwood, 3 Atk. 563, 567.*

It will be observed that in this class of cases the rule enforced
is, that the court will not suffer anyone willfully to defeat its
jurisdiction over the subject it has in hand.    It treats as pun-
ishable any attempt to frustrate its authority.    But outside of
the scope of such a purpose the court will not dispense with the
strict service of its writ.    None of our own adjudications appear
to have gone beyond this limit; none of them have held that a
party will be in contempt by disobeying an injunction irregularly
served, when the subject of the writ has been left *in statu quo*,

so that the power of the court over it has not been impaired. It is obvious, therefore, that the rule in question would seldom or ever regulate the practice touching mandatory injunctions.

The result is that even if the principles pertinent to injunctions were deemed to be applicable to the order now in question, the appellant could not properly have been put in contempt by his refusal to obey it, for such refusal could in no wise interfere with the jurisdiction of the court over its subject. The entire effect of such recusancy was to procrastinate the hearing for a few days.

Let the decree appealed from be reversed.

*For reversal*—THE CHIEF-JUSTICE, LIPPINCOTT, MAGIE, REED, VAN SYCKEL, BOGERT, KRUEGER—7.

*For affirmance*—DIXON, GARRISON—2.