**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5183-16T3
                 A-5189-16T3


IN THE MATTER OF MATTHEW
CALIO, CAMDEN COUNTY
DEPARTMENT OF CORRECTIONS.

_____

Submitted November 14, 2018 – Decided December 11, 2018

Before Judges Gilson and Natali.

On appeal from the New Jersey Civil Service Commission, Docket Nos. 2016-3090 and 2016-3565.

William B. Hildebrand, attorney for appellant Matthew Calio.

Christopher A. Orlando, County Counsel, attorney for respondent Camden County Department of Corrections (Howard L. Goldberg, First Assistant County Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Civil Service Commission (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Correctional Officer Matthew Calio (Calio) appeals from two July 17, 2017 final decisions of the Civil Service Commission (Commission) suspending his employment from respondent Camden County Department of Corrections (Department). The first decision suspended Calio for thirty days based on Administrative Law Judge (ALJ) Dean J. Buono's finding that he disregarded a superior's order to ensure all inmate kitchen workers remained within the confines of the kitchen. The second decision suspended Calio for 180 days, an increase from the original 150-day suspension levied by the Department, based on the ALJ's findings that Calio failed to pat-down search inmates properly more than eighty times in a five-hour period.

We issue a single opinion disposing of these two appeals, which were calendared back-to-back, because they present similar legal issues. With respect to the Commission's decision imposing a thirty-day suspension, we affirm in part, reverse in part, and remand for the Commission's reconsideration of the penalty imposed. As to the Commission's decision imposing a 180-day suspension, we affirm.

I.

We discern the following facts from the evidence adduced at the hearings before the ALJ. During the course of Calio's approximate sixteen-year career

A-5183-16T3

as a correctional officer at the Department, he received numerous awards for exemplary service. He was also reprimanded on a number of occasions unrelated to the incidents at issue for neglect of duty and suspended twice for conduct unbecoming a correctional officer.

During all relevant times, Calio was a kitchen officer, responsible for maintaining the "care, custody and security of . . . inmates," who worked in the kitchen and for ensuring the safety of civilian kitchen workers. In August 2015, when Calio maintains he was on vacation, then-Captain Karen Taylor (Taylor)[1] observed inmates who worked in the kitchen sitting on milk crates in the hallway. She characterized the conduct as a "disruption" and "creat[ing] a safety concern" for both the inmates and the officer. Specifically, Taylor testified the behavior was "not conducive to . . . security" when inmates are outside the kitchen door because there are "life and death situations in a [c]orrectional [f]acility" and "there's a lot of contraband" in the kitchen that inmates could remove and transport throughout the facility.

Calio testified that on August 19, 2015, while he was on duty, Taylor informed him that inmates had been "reckless in the hallways," "there was a lot

---

[1] Taylor was promoted to the position of Warden during the course of this litigation in October 2016.

A-5183-16T3

of disarray in the kitchen," and a "lack of control with the inmates running up and down the hallway and doing . . . things that were not appropriate." Taylor stated she unequivocally ordered Calio that she "wanted all the inmates inside the kitchen" working and "did not want any inmates out in the hallway . . . sitting on the [milk] crates for safety reasons."

Taylor instructed Calio to write her order in the kitchen "Pass [o]n Book" so the officers who relieved Calio would be aware of "[her] directives and what [she] wanted to be followed." Calio acknowledged that "[t]he function of the Pass [o]n Book is . . . if there's an order to be followed . . . you put it in the Pass [o]n Book" so a relieving officer would be aware of the directive.

Soon after their August 19, 2015 conversation, Calio wrote the following in the Pass on Book: "per [Captain] Taylor[,] [a]ll [i]nmates [m]ust be in the kitchen." Another officer's entry that day provided, "[n]o kitchen workers in hallway/doorway," and "[p]er Captain Taylor[,] [a]ll inmates must be in kitchen." Taylor testified that because she did not instruct the relieving worker to make the entry, she speculated that Calio must have told him what to write.

At the end of her shift on August 24, 2015, Taylor noticed an inmate sitting on a milk crate outside the kitchen door. The inmate was working as a "tray runner," whose duties and functions included putting carts of food trays

onto an elevator. Taylor conceded that, "while [the tray runner is using the elevator] it [is] obviously necessary for him to be outside the kitchen." She also testified that upon noticing the runner sitting outside of the kitchen, she went to the shift commander's office, "spoke with the Lieutenants . . . and brought up the video on the camera system . . . ." After watching the video "for about ten minutes" she told her subordinate, Lieutenant Sweeten, that she wanted "him to recommend disciplinary action for . . . Calio's disregard of a direct order."

Calio testified that he did not intend to violate Taylor's order, and in fact believed he was complying with it. He maintains that he simply misunderstood the order's application to tray runners as he thought the order was directed to inmates who either were not working, or were working exclusively inside the kitchen, but not to an inmate whose work also required him to intermittently leave the kitchen. Calio stated he was on vacation when the hallway misconduct giving rise to Taylor's order occurred and suggested that circumstance contributed to his misunderstanding.

On September 21, 2015, the Department issued a preliminary notice of disciplinary action against Calio charging him with: insubordination, contrary to N.J.A.C. 4A:2-2.3(a)(2) and Camden County Correctional Facility (CCCF) General Rule of Conduct (GRC) 1.4; conduct unbecoming a public employee,

5

contrary to N.J.A.C. 4A:2-2.3(a)(6) and GRC 1.2; neglect of duty, contrary to N.J.A.C. 4A:2-2.3(a)(7) and GRC 1.3; other sufficient cause under N.J.A.C. 4A:2-2.3(a)(12); inattentiveness to duty, contrary to GRC 2.10; (breach of) security, contrary to GRC 3.2; violations in general under GRC 1.1; and a final charge characterized as "et al." (September charges).

II.

Shortly after the August 2015 incident, on September 2, 2015, Taylor learned Calio was improperly performing pat-down searches of inmates. Taylor watched nearly five hours of video of Calio's pat-down searches from that day. During those five hours, Taylor observed him incorrectly perform over forty searches and in more than forty additional instances, noted he failed to perform any search at all. On September 9, 2015, Taylor issued a supervisor's staff complaint to Calio notifying him that charges would be forthcoming for his September 2, 2015 pat-down searches and for failing to clean kitchen trays properly.

On October 1, 2015, the Department issued Calio a preliminary notice of disciplinary action for incidents involving the September 2, 2015 improper pat-down searches; for false, misleading, and untruthful statements in his written rebuttals to the September charges; and for failing to inspect liquid and food

containers, cups, and inmate trays. He was also charged with incompetency, inefficiency, or failure to perform duties, contrary to N.J.A.C. 4A:2-2.3(a)(1); insubordination, contrary to N.J.A.C. 4A:2-2.3(a)(2) and GRC 1.4; conduct unbecoming a public employee, contrary to N.J.A.C. 4A:2-2.3(a)(6) and GRC 1.2; neglect of duty, contrary to N.J.A.C. 4A:2-2.3(a)(7) and GRC 1.3; inattentiveness to duty, contrary to GRC 2.10; (breach of) security, contrary to GRC 3.2; other sufficient cause under N.J.A.C. 4A:2-2.3(a)(12); violations in general under GRC 1.1; violations of CCCF General Orders #73, #74, and #79 and CCCF Post Order #8; and a final charge of "et al." (October charges).

On February 17, 2016, the Department issued a final notice of disciplinary action sustaining the September charges and imposed a thirty-day suspension without pay. The Department issued a separate final notice of disciplinary action sustaining the October charges and imposed a 150-day job suspension without pay on March 25, 2016. Calio filed timely appeals of both disciplinary actions and the cases were transferred to the Office of Administrative Law (OAL) for a hearing.

On May 30, 2017, the ALJ issued decisions with respect to the September and October charges. As to the September charges, the ALJ sustained the charges of insubordination, conduct unbecoming, neglect of duty, breach of

security, violations in general, and other sufficient cause; dismissed the charge of inattentiveness to duty; and upheld the imposition of a thirty-day suspension without pay.

With respect to the October charges, the ALJ sustained the charges of incompetency, inefficiency, or failure to perform duties, insubordination, conduct unbecoming, neglect of duty, breach of security, violations in general, and violations of the General Orders and the Post Order, but dismissed the charges of inattentiveness to duty and the general charge of "et al.,"; and issued the modified suspension of 180 days without pay.

On July 17, 2017, in two separate determinations, the Commission accepted and adopted the ALJ's findings of fact and legal conclusions and affirmed the suspensions. These appeals followed.

On appeal, Calio argues that the ALJ's findings supporting the Commission's September charges are not supported by credible evidence and are instead based on "critical factual errors." Specifically, Calio contends the ALJ's finding that "on August 24, 2015, [then-Captain] Taylor noticed inmates sitting outside [the] kitchen and 'disrupting activities'" lacks credible evidentiary support because, according to Calio, those disruptive activities preceded Taylor's August 19, 2015 order and occurred while he was on vacation. He also

maintains that the thirty-day suspension was excessive. With respect to the October charges, he contends the increase in penalty from 150 to 180 days is also excessive and unsupported by the record.

III.

Our review of an administrative agency decision is limited. In re Herrmann, 192 N.J. 19, 27 (2007). We defer to final agency determinations unless the agency's decision is "arbitrary, capricious, or unreasonable, or [ ] not supported by substantial credible evidence in the record as a whole." In re Stallworth, 208 N.J. 182, 194 (2011) (alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). An appellant bears the burden of establishing that the agency's decision is unreasonable, capricious, or arbitrary. See Barone v. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 210 N.J. Super. 276, 285 (App. Div. 1986).

To determine whether a decision is arbitrary, capricious, or unreasonable, we consider: (1) whether the agency's decision followed relevant law; (2) whether substantial credible evidence in the record supported the decision; and (3) whether in applying the law to the facts, the administrative agency clearly erred. Stallworth, 208 N.J. at 194. Evidence is considered substantial when the evidence forms "a reasonable basis for the agency's action" or if reasonable

minds would accept the evidence "as adequate to support the conclusion" reached. Zachariae v. N.J. Real Estate Comm'n, 53 N.J. Super. 60, 62 (App. Div. 1958). If an agency decision satisfies this criteria, we accord substantial deference to the agency's fact-finding and legal conclusions, acknowledging "the agency's 'expertise and superior knowledge of a particular field.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We will not substitute our judgment for the agency's even though we might have reached a different conclusion. Stallworth, 208 N.J. at 194.

Our deference to agency decisions "applies to the review of disciplinary sanctions as well." Herrmann, 192 N.J. at 28. "In light of the deference owed to such determinations, when reviewing administrative sanctions, the test . . . is whether such punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness." Id. at 28-29.

IV.

With respect to the September charges, which we discuss in Section V, the Commission had ample evidence to adopt the ALJ's findings that Calio committed the charges of insubordination, conduct unbecoming, neglect of duty, breach of security under GRC 3.2, and other sufficient cause under N.J.A.C.

A-5183-16T3

4A:2-2.3(a)(12).  However, as discussed in section VI, we conclude the Commission, after adopting the ALJ's findings that Calio received insufficient notice that the September charges included alleged violations of Post Order 8 and General Orders 73 and 74, improperly considered those post and general orders in sustaining the charge of violations in general under GRC 1.1.  Because Calio does not challenge the decision sustaining the October charges, we address in Section VII the Commission's modification of Calio's suspension for those violations from 150 to 180 days.

V.

A. Insubordination

Although the administrative code does not define insubordination, we have "observed that it is ordinarily defined as a failure to obey a lawful order." In re Williams, 443 N.J. Super. 532, 548 n.4 (App. Div. 2016) (citation omitted). Further, GRC 1.4 required Calio to "promptly obey all lawful orders of any supervisor" and the "failure or deliberate refusal of any employee to obey a lawful order of a supervisor . . . shall constitute insubordination . . . ."

Obedience requires knowledge of that which is to be obeyed.  Perrine v. Broadway Bank, 53 N.J. Eq. 221, 225 (E. & A. 1895) (explaining in the context of a court order, "all that is required to impose the duty of obedience is that the

order shall come to [the person's] knowledge in such manner that [the person] knows what he [or she] is required to do, or to refrain from doing . . . ."). Also, it is well settled that "the importance of maintaining discipline" in a correctional facility, in light of "the danger which inheres when order and discipline are disrupted or destroyed in a prison," is a matter "peculiarly within the expertise of the corrections officials." Bowden v. Bayside State Prison (Dep't of Corr.), 268 N.J. Super. 301, 305-06 (App. Div. 1993) (citing Henry, 81 N.J. at 579).

Here, the ALJ determined Taylor was more credible than Calio and concluded that Calio clearly understood Taylor's order to maintain all inmate kitchen workers in the confines of the kitchen. Indeed, Calio admitted as much when he made a clear notation in the Pass on Book. It is equally undisputed that he subsequently permitted a kitchen worker to sit on a crate in the hallway.

Calio's claim that Taylor's order was unclear and he understood it was limited to those workers whose job was exclusively within the confines of the kitchen as opposed to tray runners who must occasionally leave the kitchen to load trays on the elevator is without merit. Calio was not cited for permitting a kitchen worker to leave the kitchen to walk in the hallway to unload trays. Rather, he was cited for permitting an inmate, assigned to kitchen duties, to sit on a milk crate in the hallway of a correctional facility in violation of a direct

12

order.  There is nothing in Taylor's order that prevents tray runners from leaving the kitchen to unload trays.  Taylor's order proscribed inmates from stationing themselves in the hallway.  The order also requires officers to monitor inmates to ensure compliance with this directive.  Further, even if the genesis of the September charges related to events that occurred while Calio was on vacation, the record supports the ALJ's findings that Taylor's order was clear, Calio understood it, and by permitting an inmate to sit in the hallway Calio failed to adhere to the order.

B.  Conduct Unbecoming

"The determination of what constitutes conduct unbecoming a public employee is primarily a question of law."  Karins v. City of Atl. City, 152 N.J. 532, 553 (1998) (citing Jones v. City of Pittsburgh, 476 A.2d 895, 898 (Pa. 1984)).  "[T]he phrase is an elastic one[] that has been defined as any conduct which adversely affects the morale or efficiency of the bureau . . . [or] which has a tendency to destroy public respect for municipal employees and confidence in the operation of municipal services."  Id. at 554 (quotation marks and quotations omitted).  We agree with the ALJ's observation that "[i]t is difficult to contemplate a more basic example of conduct which could destroy public respect in the delivery of governmental services than the image of a public

employee disregarding a direct order and allowing inmates in a correctional facility to do as they pleased." We find no basis to disturb the ALJ's finding that disregarding a clear order is sufficient to sustain a charge under N.J.A.C. 4A:2-2.3(a)(6). And, while it was not necessary for the ALJ to have also concluded that Calio permitted the tray runner to "do as [he] pleased" it certainly is a fair characterization from the undisputed facts that Calio failed to carry out his duties as a correctional officer when he permitted the inmate to sit in the hallway, outside the kitchen.

C. Neglect of Duty

N.J.A.C. 4A:2-2.3(a)(7) provides that "[a]n employee may be subject to discipline for . . . [n]eglect of duty . . . ." Although the administrative code does not define the phrase, GRC 1.3 provides that personnel is deemed to have neglected his or her duty if he or she failed to comply with a published order, that "causes any detriment to the department, its personnel, any inmate, prisoner, or to any member of the public . . . ." Again, we agree with the ALJ's finding that there is no more "basic example of neglect of duty than the image of a public employee in a correctional facility failing to follow a direct order from a superior."

14

D. Breach of Security

GRC 3.2 provides in pertinent part: "Personnel shall exercise a scrupulous regard for security in their dealings with inmates and with regard to the [CCCF] in general. Any act of commission or omission tending to undermine security shall constitute a breach of security."

The ALJ found "troublesome" the fact that Calio "continues to fail to see the security concern in an inmate seated at such a proximate location to the security desk" before sustaining this charge. Taylor's testimony that inmates working in the kitchen had access to "a lot of contraband" that they could transport throughout the facility furnished a sufficient evidentiary basis for the Commission to conclude Calio failed to exercise a "scrupulous regard for security" and that his actions tended to undermine security.

E. Other Sufficient Cause

N.J.A.C. 4A:2-2.3(a)(12) provides that "[a]n employee may be subject to discipline for . . . [o]ther sufficient cause." The ALJ decided "consideration of the charges constituting a violation" of this administrative code provision "will be limited to the regulations, rules and General Orders specifically enumerated in the Final Notice of Disciplinary Action" for the September charges.

Because the ALJ separately addressed the breach of security and inattentiveness to duty charges and already addressed GRC 1.2, 1.3, and 1.4 "within the discussion of violations of [N.J.A.C.] 4A:2-2.3(a)(2), (6) and (7)," the ALJ's other-sufficient-cause analysis centered on GRC 1.1, violations in general.

GRC 1.1 provides, in pertinent part: "Any employee who violates any rule, regulation, procedure, order or directive, either by an act of commission or omission, whether stated in this manual or elsewhere . . . , is subject to disciplinary action in accordance with the New Jersey Department of Personnel (Civil Service) rules and regulations." The ALJ noted that "[v]iolations of this rule would seem to be implicated by the appointing authority's allegations of violations of General Orders [73] and 74 as well as Post Order 8," then proceeded to conclude that Calio had violated those general and post orders.

However, as the ALJ acknowledged at the hearing, no general or post orders were "specifically articulated" in the final notice of disciplinary action for the September charges. Rather, those general and post orders were listed only in the October charges. Accordingly, after adopting the ALJ's conclusion that only charges specifically enumerated in the final notice of disciplinary action for the September charges would be considered with regard to the

16

N.J.A.C. 4A:2-2.3(a)(12) violation, we conclude the Commission mistakenly exercised its discretion in considering in the context of GRC 1.1, the general and post orders that were omitted from the September charges. Dep't of Law & Pub. Safety, Div. of Motor Vehicles v. Miller, 115 N.J. Super. 122, 126 (App. Div. 1971) ("It is firmly established that an employee cannot legally be tried or found guilty on charges of which he has not been given plain notice by the appointing authority, and the [d]e novo hearing on an administrative appeal is limited to the charges made below." (citing West New York v. Bock, 38 N.J. 500, 522 (1962))). In sum, we reverse the Commission's decision to the extent it sustained the GRC 1.1 charge. We affirm the Commission's decision regarding the remaining eight charges.

VI.

As to Calio's argument that his thirty-day suspension was excessive, the Department originally imposed that suspension based on its finding that he committed all eleven of the September charges, including the general "et al." charge and the ALJ and the Commission sustained that discipline based on the determination Calio was guilty of nine of the eleven charges. We have concluded that only eight of the charges are sustainable on this record. Therefore, we deem it appropriate to remand to the Commission for

17

reconsideration of whether those eight charges justify a thirty-day suspension. The Commission may conclude the eight charges that we have concluded were established justify the same penalty. We remand for the Commission to decide that question in the first instance.

VII.

With regard to Calio's improper pat-downs, Calio concedes that "discipline is appropriate for an employee who is discovered to be performing poor pat searches," and the video and Taylor's testimony provided ample evidence to support the Commission's findings. However, Calio contends that because his original 150-day suspension was based on three incidents -- his poor pat searches, his failure to check kitchen containers, trays, and cups, and the misleading and untruthful statements in his rebuttals to the September charges --, the Commission erred in adopting the ALJ's decision to increase the suspension to 180-days based solely upon his poor pat-down searches.

N.J.S.A. 11A:2-19 authorizes the Commission to "increase . . . the penalty imposed by the appointing authority, but removal shall not be substituted for a lesser penalty." Further, once the Commission sustains the underlying charges, "it must make a de novo determination of the appropriate disciplinary action." Scouler v. City of Camden, 332 N.J. Super. 69, 74 (App. Div. 2000) (citing

Henry, 81 N.J. at 576-80). Generally, we will defer to that determination unless the Commission abused its discretion. Herrmann, 192 N.J. at 34-35 (quoting Div. of State Police v. Jiras, 305 N.J. Super. 476, 482 (App. Div. 1997)); see In re Restrepo Dep't of Corr., 449 N.J. Super. 409, 426 (App. Div. 2017) (explaining the ultimate question for an appellate court is whether the penalty imposed is "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness" (quoting Carter, 191 N.J. at 484)).

Applying these principles, we discern no basis for disturbing the Commission's decision to suspend Calio for 180 days based on his repeated failures to properly search inmates. The Commission's decision is supported by substantial and credible evidence in the record, including Calio's disciplinary record. Further, the penalties imposed do not "shock our judicial conscience."

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for reconsideration of the penalty imposed with respect to the September charges. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5183-16T3